(No. 14161.—Decree affirmed.)
JAMES BRODERICK, Appellee, *vs.* DENNIS DRISCOLL *et al.*— (EDWARD A. McCUE, Appellant.)

*Opinion filed December 22, 1921—Rehearing denied Feb. 10, 1922.*

1. SPECIFIC PERFORMANCE—*when Statute of Frauds is no defense to performance of contract for sale of land.* Where the parties to and the terms of a contract for the sale of land can be ascertained from the written correspondence between the vendor and the agent of the purchaser the Statute of Frauds cannot be set up in defense to a suit for specific performance, and the vendor will be compelled to carry out his contract although he did not sign it himself but authorized his wife, in writing, to sign and afterwards adopted the contract and retained the cash payment.

2. SAME—*when purchaser takes property subject to rights of prior vendee.* A purchaser who buys real property with knowledge of the existence of a prior contract for its sale takes it charged with the equities in favor of the prior proposed purchaser.

APPEAL from the Circuit Court of Whiteside county; the Hon. F. D. RAMSAY, Judge, presiding.

J. J. LUDENS, for appellant.

CHARLES H. WOODBURN, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal by Edward A. McCue from a decree of the circuit court of Whiteside county directing the specific performance of a contract alleged to have been made by Dennis Driscoll for the sale of real estate to James Broderick. Dennis Driscoll was the owner of the east two-thirds of lots 8 and 9 in block 40, in Wallace's addition to the city of Sterling, which, as we understand it, was his residence. In February, 1920, he was temporarily in the Illinois Eye and Ear Infirmary in Chicago for treatment. He wrote Henry Brown, his neighbor in Sterling, asking him if he could sell his (Driscoll's) property in Sterling. for $3000, payable $1000 in cash and $2000 secured by a mortgage at six per cent. Mrs. Carrie Bowlesby, a real estate dealer in the city of Sterling, heard Driscoll's property was for sale and saw Broderick about buying it. About the same time she wrote a letter to Driscoll in Chicago that she was informed he wished to sell his property on West Eighth street, and said she thought she had a party who would give $2500 in cash for it. Driscoll replied to that letter February 27, 1920, acknowledging receipt of it and saying he would take $2500 provided his wife was willing, if the money was put in the First National Bank of Sterling to their credit. Driscoll's wife was then in Peoria and he gave her address there, so that Mrs. Bowlesby might write her if she wished. Upon receipt of that letter Mrs. Bowlesby prepared a contract for the sale and conveyance of the property by Driscoll to Broderick for $2500, $100 cash in advance and the balance when deed and abstract were delivered to Broderick. He paid Mrs. Bowlesby $100, which she sent with the contract in duplicate to Driscoll for his signature. She also wrote a letter to Driscoll, stating that "my party" would take the property as per her letter. Driscoll replied to Mrs. Bowlesby March 2, 1920, that he had said he would accept the offer made for the property if his

wife was willing. "Since, I have heard from her and she isn't willing to accept that price. If your party will give $3000 for our property go and see her, and she can sign a contract for us. In the meantime I will return the papers and check to you." On receipt of that letter Mrs. Bowlesby saw Broderick and he agreed to take the property for $3000 cash, or $1000 cash and $2000 secured by a first mortgage at six per cent, as would be most acceptable to Driscoll and his wife. He paid Mrs. Bowlesby $50 and she went to Peoria to see Mrs. Driscoll about closing a contract for the deal. Mrs. Bowlesby prepared contracts in duplicate for the conveyance of the property to Broderick, correctly describing the property, for $3000, payable $50 cash in hand, the receipt of which was acknowledged, and the balance when abstract of title was extended to date and deed delivered. The contract provided that $2000 of the purchase money might be paid by mortgage on the property at six per cent. The contract was signed in duplicate by Mrs. Driscoll in her own name, and Mrs. Bowlesby sent one of the contracts, with the $50 payment in the form of a check, to Driscoll in Chicago and gave the other to Broderick. The letter and enclosures were received by Driscoll, and he inquired of his room-mate if it would be necessary for him to sign the contract, and was told it would not be, as his wife signed it at his direction. Driscoll kept the contract, indorsed and cashed the check, and wrote his neighbor, Brown, that the place was sold. Broderick had the contract recorded, and testified that afterwards Mrs. Rider, a daughter of the Driscolls, called on him, offered to return the $50 payment and said the "deal was off;" that they were offered more money for the property and would not make him a deed. Broderick testified he refused the money and told Mrs. Rider that he would not consent to declaring the deal off, and that he was ready, able and willing to perform his part of the agreement. Broderick procured an affidavit of Mrs. Bowlesby April 23, 1920, as to the exe-

cution of the contract for the sale of the property to Broderick, signed by Mrs. Driscoll, the sending of it and a check for $50 by mail to Driscoll, together with a letter written by Mrs. Rider. This affidavit was filed for record April 24, 1920. In May following the property was conveyed to Edward A. McCue. The Statute of Frauds was interposed as a defense. The circuit court entered a decree in favor of Broderick, the complainant, directing Driscoll and Mc- Cue to execute deeds conveying the property to him upon the payment by him of the balance of the purchase money, $2950. McCue, alone, has prosecuted this appeal from that decree.

It is contended by appellant that there is no writing or memorandum signed by the parties such as is required before specific performance can be decreed, and that there is no writing sufficiently describing the property to make it capable of identification and stating price and terms of sale. It is true that in the letters written by Mrs. Bowlesby to Driscoll she did not give the name of the prospective purchaser but referred to him as "my party." She also referred to the property as Driscoll's property on West Eighth street. The proof showed he only owned the one property in Sterling. The first contract for the sale sent to Driscoll by Mrs. Bowlesby in February, 1920, disclosed the name of the purchaser and correctly described the property. Driscoll did not sign that contract because his wife objected to selling for $2500 and returned it with the cash payment to Mrs. Bowlesby. At the same time he wrote her, "if your party" will pay $3000 for the property she could see his wife and his wife could "sign a contract for us." Driscoll was practically blind and could not read or write. Mrs. Driscoll did sign the contract when shown the letter of her husband, which was written for him by a friend in the institution with him, forwarded one copy to her husband by mail, with the check for $50, and Mrs. Bowlesby kept the other copy and delivered it to appellee, who placed it on

301—12

record. Driscoll kept the copy sent him, cashed the check and retained the money. Driscoll by his writing authorized his wife to sign the contract. She did sign it, of which he was promptly informed and given a copy of it, together with the cash payment, both of which he kept. In *Forthman* v. *Deters,* 206 Ill. 159, the court said: "It is well settled by the decisions of this and other courts, that where a party accepts and adopts a written contract, even though it is not signed by him, he shall be deemed to have assented to its terms and conditions and to be bound by them." That was a specific performance case. The contract was not signed by the vendee, who sought specific performance, and the vendors contended it could not be enforced for that reason. Here the vendor in writing authorized his wife to sign the contract. She signed it in her own name, but the terms and conditions of the contract in no way differed from the terms proposed in Driscoll's letter authorizing his wife to sign it. The proof shows when the contract as executed was sent to him he accepted and adopted it and appropriated the cash payment, and he therefore became bound by it. We are of opinion the proof shows the contract was sufficiently certain and its meaning sufficiently plain that it may be enforced in equity. (*Work* v. *Welsh,* 160 Ill. 468; *Elwell* v. *Hicks,* 238 id. 170; *Cumberledge* v. *Brooks,* 235 id. 249.) Appellant bought the property with knowledge of the existence of the contract and took it charged with the equities in favor of appellee. *Forthman* v. *Deters, supra; Crawford* v. *Chicago, Burlington and Quincy Railroad Co.* 112 Ill. 314; *Allison* v. *White,* 285 id. 311.

The decree of the circuit court is correct, and it is affirmed.

*Decree affirmed.*