(No. 18205.—Decree affirmed.)
CARL J. STUCKRATH, Plaintiff in Error, *vs.* BRIGGS & TURIVAS *et al.* Defendants in Error.

*Opinion filed April 21, 1928.*

1. CONTRACTS—*action on written contract is as effective as signing it.* Where a party accepts or acts upon a contract in writing it is effective as to him even though he does not sign it.

2. SAME—*when verbal agreement that copy of contract was not to be delivered is not admissible.* Where a contract for the sale of real estate recites that the purchaser agrees to pay a certain amount "upon delivery of this memorandum" and is executed in triplicate, parol evidence of a verbal agreement, prior to the execution of the contract, that the purchaser was not to have a copy of the contract is not admissible in evidence, as it tends to vary the terms of the written instrument.

3. SAME—*when the purchaser waives right to copy of contract.* Where a contract for the sale of real estate recites that the purchaser agrees to pay a certain amount "upon delivery of this memorandum" and the purchaser pays the amount stipulated without demanding a copy of the contract he waives his right to such copy, and whether the failure of the vendors to deliver him a copy afterward will justify his failure to make further payments as stipulated depends upon the circumstances.

4. SPECIFIC PERFORMANCE—*purchaser delaying until after rise in value is not entitled to performance.* To entitle one to a decree for specific performance of a contract for the sale of real estate he must be ready to perform at all times the obligations resting upon him, and unreasonable delay, particularly where there has been a material advance in the price of the property, will defeat the right of a purchaser to specific performance, as equity will not permit a purchaser to hold back and gamble on a rise in value.

5. SAME—*abandonment of contract may be deduced from circumstances or conduct.* A rescission or abandonment of a contract in writing may be deduced from circumstances or a course of conduct clearly evincing abandonment.

6. SAME—*when vendors may treat contract as abandoned—notice.* Where vendors in a contract for conveyance have informed the purchaser that they will expect a certain payment thereunder when it is due or they will terminate the contract, and where the purchaser fails to make such payment and makes no tender of performance for a year and nine months thereafter, the vendors may

treat the contract as abandoned and may make other disposition of the property, and the purchaser cannot complain that he was not notified of a declaration of forfeiture.

7. SAME—*contract will not be enforced where it would be inequitable to do so.* Although enforcement of a contract will be granted as a matter of right where the complainant has done all that is required of him and is ready to perform his part yet to be done and where the rights of third parties have not intervened, relief will be withheld where by reason of default, *laches,* or circumstances which appeal to the good conscience of the chancellor, the enforcement of the contract would be inequitable.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. FRANCIS S. WILSON, Judge, presiding.

WINSTON, STRAWN & SHAW, (JOHN C. SLADE, GEORGE T. EVANS, and CHARLES J. CALDERINI, of counsel,) for plaintiff in error.

BUSBY, WEBER, MILLER & DONOVAN, (HARRY P. WEBER, GEORGE W. MILLER, MERRITT STARR, and DONALD J. DEWOLFE, of counsel,) for defendants in error.

Mr. JUSTICE STONE delivered the opinion of the court:

This is a writ of error sued out of this court on March 5, 1927, to review a decree of the circuit court of Cook county entered on March 11, 1925, dismissing plaintiff in error's bill for want of equity. The bill was filed to enforce specific performance of a contract for the sale of real estate, entered into between plaintiff in error and defendant in error Briggs & Turivas, a corporation. The original bill was filed against Briggs & Turivas and John L. Hopkins as the signers of the contract. It charged that the contract had been executed in triplicate but that the defendants refused to give complainant a copy notwithstanding his repeated demand for it, and also alleged that complainant was ready, willing and able to perform at all times but that said defendants had refused to perform. The defendants to the original bill answered, admitting the execution of the con-

tract and withholding a copy thereof from complainant, averring that this was done by agreement and consent of complainant. The answer avers that complainant entirely abandoned and failed to carry out his part of the contract and that the property was later sold to a syndicate. An amended bill was filed, which made all the parties of the syndicate additional parties defendant, set out the contract *in hæc verba* and set out the complainant's dealings with the property prior to and leading up to the making of the contract, alleging a resulting trust for his benefit in one-half of the property, of which Briggs & Turivas had notice when it took title, and prayed that Hopkins be decreed to hold the legal title to the premises in trust for complainant under the contract of August 4, 1921, subject only to the payment by him of such sum as may be determined by the court to be due and payable, and that a decree for specific performance of the contract be entered.

The contract recites that Stuckrath agrees to purchase and Briggs & Turivas agrees to sell and convey to him its equity in the premises described in the contract for the sum of $75,000, to be paid in the manner following: "Upon the delivery of this memorandum of agreement the said purchaser agrees to pay the last maturing note, secured by a trust deed dated November 15, 1919, and recorded January 28, 1920, as document No. 6724465 in the office of the recorder of deeds of Cook county, Illinois, to pay all interest on said note, secure the cancellation of the same and the interest notes thereto appertaining, and deliver the said canceled principal note and interest notes to Briggs & Turivas; to secure a proper and valid release from the lien of said trust deed of the following described premises:" Describing approximately ten acres of the land first described in the contract. The contract also provided: "The said purchaser further agrees to pay to Briggs & Turivas, upon the delivery of this memorandum, an amount of money equal to the difference between the amount paid by him

upon said principal note and interest notes and the sum of $20,000. Briggs & Turivas agrees that upon the payment to it of the said sum of money and the delivery to it of the said canceled principal note and interest notes and the recording of said release, to convey to the purchaser or his nominee the said premises described in said release deed. The said purchaser further agrees to pay to Briggs & Turivas at its office in Chicago, Illinois, on or before September 15, 1921, the sum of $25,000, with interest thereon from the date hereof at the rate of seven per cent per annum, and on or before November 15, 1921, a further sum of $25,000, with interest thereon from the date hereof at seven per cent per annum, and on or before March 15, 1922, an additional sum equal to the difference between the total sums theretofore paid to Briggs & Turivas under this agreement and the sum of $75000, together with interest on such sum from the date hereof at the rate of seven per cent per annum. Said purchaser agrees to pay all taxes and assessments levied upon or against the premises hereby contracted to be sold, after the year 1920, as and when the same become due and payable. The remainder of the property not conveyed by deed at the time of delivery of this agreement shall be deeded by Briggs & Turivas to John L. Hopkins, who is to hold the same for the benefit of the vendor and who shall give a deed for the same to the purchaser or his nominee upon the payment of the amounts herein specified to Briggs & Turivas by the purchaser and the complete performance of this agreement by said purchaser. Should the purchaser fail to perform this contract promptly on his part at the time and in the manner herein specified, this contract may, at the option of the vendor, be declared canceled and void, and all payments made hereunder shall thereupon be held to have been made in payment of the property theretofore conveyed by Briggs & Turivas to the purchaser or his nominee. It is understood that by this memorandum of agreement it is the intention of the parties hereto that

Briggs & Turivas shall be paid by the said purchaser the sum of $75,000 net, together with interest until payment is made, for its interest in the said premises hereby contracted to be sold, and the said purchaser is to pay all costs and charges incidental hereto. Time is of the essence of this contract and of all the conditions thereof." The contract was dated August 4, 1921. Upon hearing before the chancellor on the amended bill and answers thereto the bill was dismissed for want of equity.

Much of the evidence taken before the chancellor concerned plaintiff in error's dealings with this property before the date of the contract and the circumstances through which Briggs & Turivas took title thereto. These transactions involved the defalcations of Albert I. Lauer, who was associated with Briggs & Turivas and who later confessed that he had embezzled money of the corporation, a portion of which was used to purchase this property. The land prior to the sale of the ten-acre tract consisted of about one hundred and five acres. That now involved consists of approximately ninety-five acres lying east of the right of way of the New York, Chicago and St. Louis railroad, in the city of Chicago. It developed that Lauer's purchase of this property was at the request of plaintiff in error and the title thereto was taken in the name of Fred W. Fuchs, Lauer's brother-in-law. Following the discovery of Lauer's defalcations, this property, with several other tracts of land held by Lauer, was transferred to Briggs & Turivas. Since plaintiff in error has stated in his brief that he here raises no question concerning the chancellor's findings concerning a resulting trust but relies solely on his contract and his right to the specific performance thereof, it is deemed that he has abandoned that branch of the case, and the evidence taken thereon need not be considered further than may be necessary to a full consideration of his right to specific performance. The contract was prepared by Earl J. Smith,

one of the defendants to the amended bill. He is an attorney at law associated with the firm of Hopkins, Starr & Hopkins, counsel for Briggs & Turivas.

It appears from the undisputed evidence that from 1917 to 1920 plaintiff in error was employed as a salesman by Briggs & Turivas. About August 10, 1920, after the discovery of the defalcations of Lauer, plaintiff in error was called into the office of Briggs & Turivas and questioned concerning his relationship with this property and Lauer's shortage. He denied any knowledge of Lauer's defalcations, and counsel for defendants in error on the trial stated that it was not their purpose to attempt to show that he had anything to do with such defalcations. The property was transferred by Fuchs to Briggs & Turivas and was held by that firm until it was notified by the Secretary of State that it was necessary that it dispose of the property. On June 4, 1921, plaintiff in error entered into a contract with the Niagara Radiator and Boiler Company to sell to it ten acres off the northwest corner of this tract for $30,000, and he received a down payment of $3000. He did not have title to the property but made numerous offers to buy that tract from Briggs & Turivas, and also requested that he be allowed to subdivide the entire property. These propositions were refused by Briggs & Turivas. A few days prior to the date of the contract here involved plaintiff in error proposed to buy the entire tract at $75,000, stating that he had a purchaser for the ten acres at $20,000. Briggs & Turivas agreed to sell him the entire tract for $75,000 on condition that out of the sale of the ten acres he pay a certain trust deed note of $14,000 and the balance of $20,000 to it and secure the release of the trust deed as to the ten acres. The contract above set out was executed. It appears that a trust deed against the entire property, amounting to approximately $56,000, was held by parties known in this record as the "Curtis Estate." Plaintiff in error sold the ten acres for $30,000. The purchaser, the

Niagara Company, paid the Curtis estate the sum of $14,-549.27, being the amount of the last maturing note, and the balance of the $20,000 was delivered to Briggs & Turivas. The ten acres so sold were thus taken out of the contract. Under the contract plaintiff in error was to pay the sum of $25,000 on September 15, 1921, a like sum November 15, 1921, and a balance sufficient to make the total sum of $75,000 on or before March 15, 1922, and to pay all interest and accruing payments on the trust deed note, taxes and assessments levied against the premises after the year 1920 as the same became due and payable. Time was made the essence of the contract. Plaintiff in error made none of these payments and did nothing toward carrying out his part of the contract until May 5, 1923, when he tendered the sum of $115,000 and demanded a deed, which tender and demand were refused. On July 10, 1923, he filed his bill for specific performance.

Plaintiff in error bases his ground for reversal on the claim that Briggs & Turivas breached the contract in two particulars: First, by refusing to give him a copy of it; and second, by failing to have John L. Hopkins sign the contract. His argument is, that while he made no payments as specified in the contract, he was not required to do so until he received a copy of the contract, signed by Hopkins; that refusal to give him a copy of the contract prevented his financing the purchase of the property; that he had made arrangements with a Blue Island bank to finance the contract when he could produce it; that since Hopkins was to hold the property for the benefit of Briggs & Turivas, to be turned over to plaintiff in error, or anyone nominated by him, upon making the payments specified in the contract, Hopkins should have signed it, and that his refusal or failure to do so justified the delay of plaintiff in error in making payments under it. As to this last contention, it may be noted that in the original bill plaintiff in error alleged that Hopkins had signed the contract. Hopkin's failure to

329—36

do so can therefore scarcely be said to be a justification for the failure of plaintiff in error to make the required payments, as it is apparent from the original bill that he did not know that Hopkins did not sign the contract, but, on the contrary, supposed that he had. That supposed ground, therefore, requires no further consideration. The evidence shows that the deed was made to Hopkins and he took title in accordance with the terms of the contract and held it until February, 1922, when, on resolution of the board of directors of Briggs & Turivas that he do so, he re-transferred the property to the corporation. Where a party accepts or acts upon a contract in writing, it is effective as to him even though he does not sign it. *Broderick* v. *Driscoll,* 301 Ill. 174; *Memory* v. *Niepert,* 131 id. 623; *Ames* v. *Moir,* 130 id. 582.

Defendants in error, in replying to the contention of plaintiff in error that he was entitled to a copy of the contract, say, and their evidence is, that it was understood and agreed prior to the execution of the contract that the plaintiff in error was not to have a copy of it; that Briggs & Turivas and Hopkins knew that he was without financial responsibility and they refused to give him a copy of the contract, which might be recorded, or, as they characterized it, "peddled around." We are of the opinion, however, that the contract shows that a copy of the same was to be delivered to plaintiff in error. The language in it, "upon the delivery of this memorandum of agreement the said purchaser agrees to pay the last maturing note," etc., and the language regarding the balance after sale of the ten-acre tract, "the said purchaser further agrees to pay to Briggs & Turivas upon delivery of this memorandum, an amount," etc., so shows. The contract was executed in triplicate. Under this construction of the contract parol evidence of a verbal agreement that plaintiff in error was not to have a copy, which agreement was made prior to the execution of the contract, was inadmissible, as it tended to vary the

terms of the written instrument. (*Armstrong Paint Works v. Can Co.* 301 Ill. 102; *Linn* v. *Clark,* 295 id. 22; *Chicago Auditorium Ass'n* v. *Fine Arts Building,* 244 id. 532; 5 Wigmore on Evidence, sec. 2430; 1 Greenleaf on Evidence,—16th ed.—sec. 275.) However, plaintiff in error completed the contract as to the ten acres without demanding a copy of the contract and thereby waived the right to a copy prior to such completion. Whether failure to deliver a copy of the contract before performance of the balance of it justified the delay indulged by plaintiff in error in offering to make payment depends upon the circumstances. His counsel argue that a copy of the contract was necessary in order to complete financial arrangements. Plaintiff in error testified that he made demand for a copy of the contract, or asked Earl J. Smith if he was going to give him a copy, and that he was told "no," and that Hopkins told him that he was not to get a copy because Turivas didn't want him to have one. In this he is disputed by the testimony of witnesses for defendants in error who testified that it was understood that he was not to have one; that he at no time requested that a copy be delivered to or shown to anyone who was considering financing him, and that he at no time stated that anyone was ready to finance his purchase of the property by delivery of the contract. Smith testified that a few days after the date of the contract Stuckrath came to him and said, "Are you going to give me a copy of that contract with Briggs & Turivas?" and that the witness replied "No;" that Stuckrath said, "That is all I want to know," and walked out. This testimony is not denied by Stuckrath.

Plaintiff in error offered to prove by Christian Krueger, of the Blue Island bank, that the latter had agreed to supply the necessary funds to complete the purchase of the property. Objection to this offer was sustained. This ruling is assigned as error. This error does not justify a reversal of the decree. Turivas testified that he had a con-

versation with Krueger in which Krueger told him that he was not financing Stuckrath; that the latter was not to be taken seriously; that he was doing business on a shoe-string. Krueger, when placed on the stand, admitted that Turivas asked him whether he was going to finance Stuckrath, but testified that he didn't say that he was and didn't say that he wasn't. His answers were evasive. We are of the opinion from the entire evidence in the record, that though the offered evidence had been admitted, the chancellor was justified in finding that in fact Stuckrath had no one to finance him. He admits that he at no time made a request that a proposed financial backer have the contract or see it. He made no demand for a copy at the time he made tender and demanded a deed. We are of the opinion that failure to give the plaintiff in error a copy of the contract did not justify his delay or refusal to make the payments required by the contract. Turivas and Hopkins testified that the contract was available to anyone financing the deal for Stuckrath but that they received no such request. If he had a financial backer who wanted the contract he naturally would have made some effort to have him put into possession of the contract. The cases cited by Stuckrath's counsel to support his contention that it was required that a copy be first delivered by the vendor and that he was excused from performance pending delay so to do are not applicable to the facts of the case.

Turivas testified that in a conversation with Stuckrath prior to September 15, 1921, he informed him that Briggs & Turivas would expect the payment of $25,000 on that day and would not grant an extension of time; that he again on the 15th of September, or the day before, reminded him of the payment, and that Stuckrath said that he had hoped Briggs & Turivas would grant him an extension of time, but he was informed that it would not do so but that unless he made the payment at that time the contract would be terminated. He also testified that in Feb-

ruary, 1922, owing to the necessity that his firm dispose of the property before the report to the Secretary of State, due on March 1 of that year, a syndicate was formed to take over the property and it was again transferred to Hopkins, who holds it for the syndicate. Plaintiff in error contends that since all of the parties to this syndicate were in one way or another connected with the Briggs & Turivas corporation or its counsel this transfer was a device to avoid performance of the contract. It is not claimed, however, that the transfer was made to third parties without notice of the transactions with Stuckrath concerning the property, but it was made on the ground that Stuckrath having failed to make the necessary payments, taxes and interest charges, as required by the contract, the same was no longer in force. Though it be conceded that the transfer to the syndicate could not operate to defeat the right of Stuckrath to an enforcement of the contract, if he had such right, we are of the opinion that his utter failure to carry out any portion of the contract from September 15, 1921, the date of the first payment, until May 5, 1923, when he made tender and demanded a deed, shows a state of facts justifying denial of specific performance. It is conceded that during that period the property rose very rapidly in value, and that during all that time it was necessary that Briggs & Turivas pay the taxes, principal and interest payments on the mortgage, and other charges arising thereon. Plaintiff in error's bill was not filed until July 10, 1923. Though the decree against him was entered on March 11, 1925, this writ of error was not sued out until March 5, 1927. During all this delay the value of the property advanced sharply. One may not delay application for relief in equity in a case of this character for the purpose of speculating on the rise or fall of the value of the property embraced in the contract. In order to entitle one to a decree requiring the specific performance of such a contract the complainant must be ready to perform at all times the accrued obligations resting upon

him. Unreasonable delay, particularly where there has been a material advance in the price of the property, will defeat the right to specific performance. (*Bauer* v. *Lumaghi Coal Co.* 209 Ill. 316; *Morse* v. *Seibold,* 147 id. 318; *McCabe* v. *Crosier,* 69 id. 501.) Equity will not permit a purchaser to hold back and gamble on the future rise of property. *Boardman* v. *Bubert,* 325 Ill. 38; *Hayne* v. *Fenton,* 321 id. 442; *Hoyt* v. *Tuxbury,* 70 id. 331.

Plaintiff in error contends that he was entitled to notice of forfeiture of the contract, and that not having received notice the contract was still in existence when he made tender and demanded a deed. A rescission or abandonment of a contract in writing may be deduced from circumstances or a course of conduct clearly evincing abandonment. (*Hayes* v. *Carey,* 287 Ill. 274; *Lasher* v. *Loeffler,* 190 id. 150; *Cuppy* v. *Allen,* 176 id. 162; *Hale* v. *Bryant,* 109 id. 34.) The rule requiring notice of forfeiture of a contract for the sale of real estate is based on conduct on the part of the party seeking the benefit of forfeiture which would lead the other party to infer that he was not insisting on time as of the essence of the contract. Under such state of facts the authorities are uniform that notice and demand must be made before the contract may be forfeited. Such rule has no application here. There has been no showing whatever in the record that Briggs & Turivas did or said anything to plaintiff in error that would indicate the firm was not insisting upon performance of the contract in accordance with its terms as to the time of payment. On the contrary, the testimony of Turivas was that he informed plaintiff in error on September 15, 1921, when the first payment was due, or the day before, that such payment must be made in accordance with the contract or the contract would be terminated. This was notice of an election to insist on a strict performance of the contract according to its terms. This Briggs & Turivas had a right to do, and unless it by its own acts led plaintiff in error to

believe that the forfeiture would not be insisted upon, he knew the contract was terminated. He had notice by the contract that Briggs & Turivas had a right to terminate it. Having been told that the contract would be terminated, he had notice of an election to terminate it in case of a failure to pay. At no time thereafter did he make any attempt to perform.

The rule is that where a contract for the sale of real estate is entered into with complete understanding and fairness on both sides, and the party seeking specific performance has done that which was required of him by the contract and stands ready to perform the part yet to be done, such relief will be granted not as a favor but as a matter of right where the rights of third parties have not intervened. (*Fagan* v. *Rootberg*, 320 Ill. 586; *Gottlieb* v. *Kaplan*, 319 id. 60; *Park* v. *Koopmann*, 311 id. 350; *Mackie* v. *Schoenstadt*, 307 id. 398; *Riemenschneider* v. *Tortoriello*, 287 id. 482.) It is also the rule that where, by reason of default, *laches*, or circumstances which appeal to the good conscience of the chancellor, the enforcement of the contract would be inequitable, the relief will be withheld. (*Booth* v. *Edwards*, 322 Ill. 489; *Miller* v. *Shea*, 300 id. 180.) There is not, as is supposed, any inconsistency between these statements of the rule. The discretion of the chancellor is authorized where circumstances show the enforcement of the decree to be inequitable. In this case plaintiff in error performed none of the requirements of the contract other than taking and paying for the ten acres hereinbefore referred to. That, in the contract itself, is treated as a separate transaction and was completed, and plaintiff in error received a profit of $10,000 from the transaction. He made no effort to perform for a year and nine months following the execution of the contract. After notice from Briggs & Turivas that it would expect a strict compliance with the contract, and the failure of plaintiff in error to meet the payments due on September 15 and No-

vember 15, defendants in error had a right to treat the contract as abandoned. (*Hayes* v. *Carey, supra.*) The chancellor saw and heard the witnesses, and from an examination of the somewhat lengthy record of evidence we are satisfied that we would not be justified in disturbing his findings of fact. Plaintiff in error did not discharge the burden cast upon him to establish his right to a decree for specific performance.

The decree dismissing the bill will therefore be affirmed.

*Decree affirmed.*