(No. 32798.—

Dr. Louis A. Rose *et al.*, Appellees, *vs.* Andrew M. Dolejs *et al.*, Appellants.

*Opinion filed November 18, 1953.*

HADLEY & LEREN, of Wheaton, and ALFRED M. LOESER, of Chicago, (ALEX J. BUREK, of counsel,) for appellants.

RATHJE & WOODWARD, of Wheaton, (ALFRED E. WOODWARD, of counsel,) for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Appellees, Dr. Louis A. Rose and Margaret Gallery Rose, his wife, vendees of certain real estate located near Hinsdale in Du Page County, hereinafter referred to as plaintiffs, filed a bill for injunction in the circuit court of Du Page County, seeking to restrain appellants, Andrew M. Dolejs and Marie Dolejs, his wife, assignees of the rights and interests of the vendors of the real estate, and hereinafter referred to as defendants Dolejs, from prosecuting a certain forcible entry and detainer suit previously commenced by them in the county court of Du Page County.

The bill prayed that the court issue a temporary injunction enjoining the prosecution of the forcible entry and detainer suit, begun by defendants Dolejs, that their contract of purchase be reformed in accordance with the agreement made between plaintiffs and the original vendors, Victor and Olga Schiller, his wife, hereinafter known as defendants Schiller, and requested a complete determination of the rights of the respective parties in and to said premises. The court granted plaintiffs' application for temporary injunction and referred the cause to the master in chancery to hear the evidence and make findings and recommendations. The master's findings and recommendations were in favor of plaintiffs. Before entry of the decree by the lower court plaintiffs further amended their complaint praying that the defendants Dolejs be compelled to convey the premises in question to them upon their deposit with the clerk of the court of the amount found to be due under the contract.

Subsequently, in January, 1952, the Schillers filed a counterclaim against the defendants Dolejs, averring that they had first assigned all their interest in said contract to one Koncil, whom Dolejs claimed to have obtained as a purchaser, and further averring that Koncil was not the real purchaser thereof, but that Dolejs was in fact the real purchaser and had wrongfully collected a real-estate commission from the counterclaimants. The Schillers offered to return the $10,000 paid by Dolejs to Koncil and by Koncil to the counterclaimants, and prayed a cancellation of the deed, a reconveyance and a return of the $500 commission.

The decree entered by the court perpetually enjoined the defendants Dolejs from prosecuting the forcible entry and detainer suit in the county court and declared void a purported forfeiture of the contract of purchase by the defendants Dolejs, reformed the contract to conform with modifications shown by plaintiffs, and ordered plaintiffs

to deposit $11,320.24 with the clerk of the court within forty days, ordered the defendants Dolejs to convey the premises to plaintiffs within ten days after deposit of said sum, and that the master in chancery execute a deed for defendants Dolejs in the event of their failure to convey as directed, and providing the conveyance would not be subject to the prayer of the counterclaim of the defendants Schiller filed during the course of these proceedings. This action involves a demand for specific performance, and an action for specific performance of a contract to convey real estate involves a freehold. (*Rawlins* v. *Bogusiewicz,* 397 Ill. 548.) A freehold being involved, defendants Dolejs, alone, prosecute this appeal directly to this court, seeking to reverse the decree.

It is alleged that on May 10, 1948, plaintiffs, as purchasers, entered into a written contract with the defendants Schiller, as vendors, for the purchase of 40 acres of vacant land situated south of Hinsdale, Illinois. By the terms of this contract the purchase price of $15,000 was payable $5000 on June 1, 1948, $5000 on June 1, 1950, and $5000 on June 1, 1952, with interest at 5 percent payable annually on the unpaid balance. Plaintiffs paid $5000 shortly thereafter. Plaintiffs moved a house onto the land in which they lived until January 25, 1949, when the house burned. Plaintiffs allege they were hard pressed for a place to live with their family and therefore began remodeling a garage which was not destroyed by the fire. The executed copy of the contract burned in the fire and plaintiffs refused to make their interest payment on June 1, 1949, until defendants Schiller furnished them with a copy thereof, which they did on June 13, 1949.

Plaintiffs claim that in July of 1949 they informed the Schillers they wished to build a house on the property, but they could not if they would be required to make the contract payment in 1950. They further allege that Victor Schiller orally agreed that the 1950 payment of $5000 plus

interest be extended to June 1, 1951, and the payment due in 1952 be accelerated to June 1, 1951, making the entire balance due in 1951.

Plaintiffs began the construction of a large dwelling in July of 1949. The master found that the house is now about 60 percent completed and has an appraised value of $16,000 to $17,000.

In May of 1950 defendant Schiller found himself in need of money and made demand on plaintiff Rose for the $5000 originally due in 1950. Said plaintiff claimed he then reminded Schiller of the extension agreement. Thereafter on August 2, 1950, defendants Schiller assigned their rights under the contract of purchase and sold the real estate to one Anton Koncil. Defendant Dolejs was the real-estate broker for the deal, collecting $500 for his services. Shortly thereafter Koncil assigned the contract to the Dolejs and gave them a joint tenancy warranty deed to the property. The Dolejs assert they paid the 1949, 1950, 1951 and 1952 taxes on the property long after those tax payments were due. They received no compensation, rent, interest, principal, or other thing of value since they purchased on August 15, 1950. It is on the foregoing transaction that the Schillers base their counterclaim to void the transaction and return the commission paid thereon.

On August 15, 1950, the defendants Dolejs served a 30-day notice on plaintiffs, demanding $5500. On September 16, 1950, defendants Dolejs served a forfeiture notice on plaintiffs. Plaintiffs allege that thereafter until the middle of December, 1950, plaintiffs and the Dolejs carried on negotiations to arrange a mortgage for plaintiffs. On December 29, 1950, defendants Dolejs started a forcible entry and detainer suit in the county court of Du Page County seeking possession of the premises.

Plaintiffs instituted this suit on January 16, 1951. On May 7, 1951, the date hearings before the master began, plaintiffs tendered to defendants Dolejs the sum of

$11,143.26, comprising $10,000 principal due on the contract, $1000 representing interest at 5 percent on the unpaid principal due June 1, 1951, $136.43 being the 1949 taxes paid by defendants, and $6.83 interest for one year at 5 percent on taxes paid. Andrew Dolejs refused this tender.

The proofs show that on September 1, 1949, A. W. Kletschke, zoning officer for Du Page County, gave plaintiffs a red ticket warning them not to build the building they were commencing. No permit was ever issued to build a building on the premises.

The defendants Dolejs assert that they purchased the interest of the original contract vendors without any knowledge of the alleged oral extension. These defendants contend that even if such oral extension occurred, such a verbal contract is within the condemnation of the Statute of Frauds, providing that no action shall be brought to charge any defendant upon any agreement that is not to be performed within one year from the making thereof unless such promise or agreement, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person authorized by him to lawfully so sign, and especially where the charge is upon a contract for sale of lands.

It is not disputed that the original contract was signed on May 10, 1948. Dr. Rose testified that in June or July of 1949, soon after his family had moved into the converted garage on the property, he spoke to Victor Schiller about rebuilding the burned house. Dr. Rose asserted that the conversation took place in his driveway, while Victor Schiller sat in his car, and that he asked for an extension of the payment due on June 1, 1950. Unless they received an extension they would have been unable to rebuild. Rose proposed an extension to June 1, 1951, and an acceleration of the 1952 payment to the same date, thus allowing them to rebuild the house, obtain a mortgage and pay the entire

amount due under the contract. He asserts that Schiller told him to go ahead and build, as that way he would get his money quicker. Mrs. Rose testified to the same facts and circumstances.

Victor Schiller, on cross-examination under section 60 of the Civil Practice Act, denied the oral extension claimed by the plaintiffs. He claimed he granted an extension from 1951 to 1952 which was the only extension he ever granted. Subsequently he admitted that on April 12, 1951, he stated in his deposition that he granted a year's extension from 1949 to 1950 and then to 1952. Upon being questioned by his own attorney he claimed he was mistaken when his deposition was taken, and that the only extension given was from 1951 to 1952.

In their answer to the second amended complaint the defendants Dolejs assert that an agreement was made in 1949 to accelerate the 1952 payment to 1951 and to extend the 1949 payment to 1950. The Dolejs thus select Victor Schiller's testimony in his deposition as being most worthy of belief.

Plaintiff Rose testified that in May of 1950 he was present at the Schiller home and Mrs. Schiller told him they could not wait until the home was finished to get their money, but needed their $5000 then. She also said Rose had a lot of nerve asking Vic for an extension. Later in June of 1950 the Schillers came to the Rose home complaining that they could not wait to get the entire amount due. Mrs. Rose testified that Mrs. Schiller told her at that time that Vic had no right to grant an extension.

The evidence presented by defendants is both confusing and contradictory in itself. The plaintiff's testimony concerning the extension is both clear and in accordance with the circumstances as evidenced by all of the proof presented. The master, who heard the evidence, found that the defendants Schiller granted the alleged extension to the plaintiffs. The chancellor, who considered the evidence on ex-

ceptions, approved the finding of the master as to the granting of this extension. Where the master in chancery hears the evidence and makes findings thereon, which findings are approved by the chancellor who considers the evidence on exceptions taken thereto, such findings will not be disturbed by this court unless manifestly against the weight of the evidence. (*Wurth* v. *Hosmann*, 410 Ill. 567.) The finding as to the extension agreement is clearly not against the manifest weight of the evidence. Consequently, that finding will not be disturbed by this court. There was such an extension agreement as alleged by plaintiffs.

Defendants contend that it is nowhere shown that Victor Schiller was the agent of Olga Schiller for the purpose of extending the time of payment. Neither is it shown that Olga Schiller ever consented to or acquiesced in such an agreement. However, the evidence does disclose that on two different occasions Olga Schiller, while talking to one or both of the plaintiffs, discussed the extension agreement. She was obviously aware of the extension agreement. She was the wife of Victor Schiller and was acquainted with his business practices. Moreover, Olga Schiller was never once produced to testify either *pro* or *con* as to her knowledge of or consent to the extension agreement. It is only defendants Dolejs who insist that Olga Schiller never consented to the agreement. The evidence indicates to the contrary, however. It is clear that Olga Schiller knew about the extension, never once repudiated it, but instead acknowledged its existence. Whether or not her husband was her agent for such extension, she acquiesced in his act. Mrs. Schiller never once tried to forfeit the contract for failure to pay on the date set by the original contract. The plaintiffs, relying on the extension agreement and her obvious acquiescence thereto, proceeded to construct a home upon the premises. Certainly, Mrs. Schiller could not cause a forfeiture of the contract, being bound by the extension agreement and principles of estoppel

*in pais.* Any other determination would effect an injustice on plaintiffs. (*Malloy* v. *City of Chicago*, 369 Ill. 97.) If Mrs. Schiller could not assert that she failed to consent to the extension agreement, certainly the defendants Dolejs could not make the assertion for her. The chancellor determined that both Victor and Olga Schiller were bound by the extension agreement.

Defendants Dolejs urge that the extension agreement, being oral and for a term longer than one year, violates the Statute of Frauds. It has been held that acts of part performance are sufficient, in a court of equity, to take an oral agreement out from under the operation of the Statute of Frauds. There is no doubt that a parol conveyance of land may be taken out of the Statute of Frauds if the person to whom the parol contract of conveyance is made takes possession thereunder, performs all of the requirements thereof, and makes valuable improvements with his own means and upon the faith of the promise. However, the promisee must take possession under the parol contract and it is not sufficient to prove that he was previously in possession. *McCallister* v. *McCallister*, 342 Ill. 231; *Christensen* v. *Christensen*, 265 Ill. 170.

The oral agreement here in issue is not, however, one for the conveyance of land. The contract for conveyance of land existing between these parties is the original written contract. This oral agreement merely extends the time for making of one payment of purchase money required by the written contract, and accelerates another. This is merely an oral agreement for the payment of money. Since this is not an oral contract of conveyance it is not required that it be proved that plaintiffs took possession under the oral contract in order to avoid the Statute of Frauds. To take an oral promise, not a contract to convey real estate, out of the Statute of Frauds, the evidence should establish with reasonable certainty not only that an agreement was made but also its terms clearly and specifically. The performance

relied on must place the party who has performed in such a situation that it would be fraud upon him if the agreement were not carried out. (*Nelson* v. *Nelson*, 334 Ill. 43; *Holsz* v. *Stephen*, 362 Ill. 527.) Plaintiffs assert, and the facts indicate, that unless they had been granted an extension of the time for making the payment, they would never have begun the construction of a home on the property in question. In complete reliance on that agreement plaintiffs expended the sum of $16,000 or $17,000 in constructing a dwelling. The Schillers stood quietly by while the plaintiffs expended these sums in the improvement of this property and never once repudiated the agreement or attempted a forfeiture. They did request that the $5500 payment be made in June of 1950 but did not persist in their demand on being reminded of the extension agreement. To assert the Statute of Frauds at this time would work an injustice and fraud upon plaintiffs by depriving them of the sums expended in reliance upon the oral promise and the first payment of purchase money. The erection of this home on the premises is certainly such part performance as will take this oral agreement out of the Statute of Frauds.

This is not a case where mere conduct on the part of the vendor has waived his right to declare a forfeiture of a contract of which time is of the essence. In such cases the right of forfeiture may be resumed by the giving of a definite and specific notice of intention to require performance of that feature of the contract. (*Forest Preserve Real Estate Improvement Corp.* v. *Miller*, 379 Ill. 375.) Here, we have an agreement of extension, a reliance thereon by plaintiffs to their detriment, and a consequent estoppel on the part of defendants to assert the original contract terms. The right of forfeiture was not waived by defendants, or their predecessors' conduct and hence the rule here discussed cannot be applied to restore the right of forfeiture.

Moreover, forfeitures are not favored by courts of equity and parties will be protected against them wherever

wrong or injustice will result from their enforcement. It is especially well settled that where the agreement is simply one for the payment of money, a forfeiture of land incurred by the nonperformance of the agreement will be set aside on behalf of the defaulting party or relief will be granted in any other manner made necessary by the circumstances of the case, on the payment of the debt, interest and costs, unless complainant has debarred himself by his own conduct. This doctrine is followed when the failure has not been willful, and where there is a failure to pay taxes. (*Dodsworth* v. *Dodsworth*, 254 Ill. 49.) Here, the agreement was simply for the payment of purchase money, interest and taxes. The plaintiffs had paid $5000 principal and $500 interest and erected improvements valued at $16,000 or $17,000. It would certainly amount to an injustice to forfeit all of such investment for a failure to make a $5500 payment. This is especially true when it is considered that defendants rejected a tender by plaintiffs on May 17, 1951, of $11,143.26, being the unpaid principal in full and interest under the contract plus taxes and interest for 1949. The decree of the court ordered a conveyance to be made to plaintiffs on the deposit with the clerk of that same amount plus $176.98 for 1951 taxes and interest found paid by defendants in July of 1952.

Counsel for defendants Dolejs continually refers to his clients as "innocent purchasers," not bound by the oral agreements and conduct of the defendants Schiller. Defendants Dolejs purchased all right and interest of the Schillers under their contract of sale to the plaintiffs. It has been held innumerable times that the assignee of a non-negotiable chose in action, such as this contract of sale, takes the interest assigned therein subject to all legal and equitable defenses existing at the time of or before notice of such agreement. (*Chicago Title and Trust Co.* v. *Smith*, 158 Ill. 417.) The original contract for warranty deed, executed by the Schillers and the Roses, was assigned

by the Schillers on August 15, 1950, to Anton Koncil who in turn, on August 17, assigned the same to the defendants Dolejs. This contract is not a negotiable chose in action within the requirements of section 1 of the Negotiable Instrument Law. (Ill. Rev. Stat. 1951, chap. 98, par. 21.) Not being negotiable, this contract is subject to any defenses the Roses may have had against the Schillers.

Moreover, defendants Dolejs are charged with knowledge of the extension agreement. When the Dolejs purchased the interest of the Schillers they knew that the plaintiffs were in possession of the property under claim of right and were in the process of constructing a house thereon. Defendants are therefore chargeable with notice of all facts that an inquiry directed to the plaintiffs would have disclosed. (*Thomas* v. *Burnett,* 128 Ill. 37; *Rock Island and Peoria Railway Co.* v. *Dimick,* 144 Ill. 628.) Such an inquiry would have disclosed the oral extension agreement, and defendants are therefore charged with knowledge of it.

Defendants Dolejs also maintain that the extension agreement is void and illegal for the reason that plaintiff, in reliance upon the extension agreement, began the construction of a home assertedly in violation of certain zoning ordinances of Du Page County. While the extension may well have facilitated the construction of the dwelling, the construction thereof was no part of the extension agreement. The consideration for the extension was the acceleration of the 1952 payment to 1951. The act of building the house was not the foundation of the contract nor any part of the consideration therefor. Unless it is a part of the contract, or part of the performance thereunder, any illegality connected therewith cannot affect the contract so as to render it void and illegal. In all of the cases cited by the defendants in support of this proposition the illegal act which rendered the contract void was part of the contract or part of the performance thereunder.

The proof indicates that plaintiff, Dr. Rose, was using the premises for the practice of naprapathy in violation of the law of the State of Illinois. Because of the asserted violation of the zoning ordinances of Du Page County, and plaintiff Rose's use of the premises for the illegal practice of naprapathy, defendants Dolejs assert plaintiffs have no standing in a court of equity for the reason that they do not come there with clean hands. In the case of *Carpenter's Union* v. *Citizens Committee,* 333 Ill. 225, it is said "The rule that a complainant must come into equity with clean hands means that he must do equity as respects the defendants' rights in the particular matter of the suit. (1 Pomeroy's Eq. Jur. sec. 307.) The rule does not go so far as to prohibit a court of equity from giving its aid to a bad or faithless man or a criminal. The dirt upon his hands must be his bad conduct in the transaction complained of. If he is not guilty of inequitable conduct towards the defendant in that transaction his hands are as clean as the court can require." If the plaintiff in constructing his home did violate the zoning ordinance of Du Page County, and if he did use the premises for the practice of naprapathy in violation of the Medical Practice Act of the State of Illinois, such offenses are a matter between the plaintiff and the county and State officials. Such acts are no part of, nor are they remotely connected with, the execution of the original contract for warranty deed and the extension agreement entered into between the Roses and the Schillers. The alleged offenses or violations are no part of the transactions or matters comprising this suit between plaintiffs and defendants. So far as the defendants are concerned, plaintiffs did come into the court of equity with clean hands.

No errors being found, the decree of the circuit court of Du Page County is hereby affirmed.

*Decree affirmed.*