CLARENCE L. PANNETT, Plaintiff-Appellant, *v.* ERNEST SCHNITZ *et al.*, Defendants-Appellees.

Fifth District   No. 76-340

Opinion filed June 21, 1977.

John I. Lundmark, of Scott and Lundmark, of Grayville, for appellant.

Dale A. Allison, of Aulvin and Allison, and Dale A. Allison, Jr., both of Mt. · Carmel, for appellees.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from the judgment of the circuit court of Edwards County denying relief to plaintiff-appellant, Clarence L. Pannett, under the Illinois forcible entry and detainer statute (Ill. Rev. Stat., ch. 57, par. 1 *et seq.*).

In January 1973, plaintiff, Clarence L. Pannett, and his partner, Dennis Gibson, entered into an installment contract with the defendants, Ernest and Lucille Schnitz, for the purchase of the "Stop-N-Shop" grocery and restaurant in West Salem, Illinois. Under the contract, the partners were to make 162 equal payments of $1,000 and a final payment of a slightly lesser amount. Payments were to be made on the fifteenth of each month to the sellers through a bank in Mt. Carmel, Illinois. The installment contract provided, regarding default:

> "*Default.* In the event of failure of Buyer to make any payment of such purchase price or interest thereunder within 90 days after the same are due hereunder, or to pay taxes or all insurance payments, or assessments when due, the Seller may declare this agreement and Contract for sale terminated and shall thereupon be entitled to immediate possession of said premises, and in such event the payments made by Buyer may be retained by Seller as liquidated damages.
>
> ❋ ❋ ❋
>
> Until default by the Buyer of the terms of this Contract, they shall be entitled to the sole possession of said premises."

With the exception of the first payment, plaintiff was never on time with the monthly payments to the Schnitzes. In February 1975 (a year before this action), the plaintiff and his partner received a notice of forfeiture after they missed three monthly payments. However, the plaintiff managed to pay the three monthly payments then due, which were accepted by defendants, and plaintiff and his partner remained in possession.

Business conditions continued to deteriorate and in February 1976, the

plaintiff and his partner were again behind in their payments. The payments for December 15, and January 15, 1976, had not been received when plaintiff called a meeting with defendants at the store on February 7, 1976.

At that meeting, plaintiff told the Schnitzes that he was terminating his partnership with Gibson, and was closing the store. He also told the Schnitzes that he would make their monthly payments until he could sell the store to a qualified buyer.

The store was closed, the inventory removed, and plaintiff began showing the premises to interested purchasers. On February 13, plaintiff submitted checks to the bank as payment of one $1,000 installment, and these were sent by the bank for collection. The bank received in return a $1,000 cashier's check from Mr. Pannett's bank on the 19th of February.

On February 17, Ernest Schnitz went to his bank to see if the $1,000 had been credited to his account. It had not been credited although the amount had been submitted for collection. He did not ask whether a payment had been received from Pannett. Mr. Schnitz then went to the county tax collector's office and paid the last half of the 1974 taxes which were overdue. Schnitz then had his attorney prepare two notices to be sent to the partners, Pannett and Gibson, declaring the contract for sale terminated by virtue of plaintiff's failure to make any payment of the purchase price within 90 days after it was due, and also, by virtue of plaintiff's failure to pay all the 1974 real estate taxes due and payable in 1975. Possession was demanded and although Schnitz did not have a building key, he took possession of the building, changed the locks, and denied possession to Pannett.

The bank returned the February payment received February 19, 1976, to Mr. Pannett's bank after being notified by Schnitz that the contract had been terminated. When Pannett tendered another payment on March 13, 1976, the bank refused to accept it or attempt to collect it.

Numerous issues are raised on appeal. The principal question is whether plaintiff Pannett was in default on February 17, 1976, either for failure to make the monthly payment within 90 days after it became due, or for failure to pay real property taxes for 1974 which were then overdue.

It does not appear that the plaintiff was in default on the monthly payments. The last payment had been for November 1975, and the next one which had not been paid, was due December 15, 1975. The contract provided that default would occur 90 days after a payment was due, which in the case of the December payment, was March 15, 1976.

There is no question that the last half of the 1974 taxes were still outstanding, and that was, on its face, a default on the contract. However,

the Edwards County treasurer and tax collector, testified at the trial that she had reached an agreement with Dennis Gibson for monthly payments on the delinquent taxes which he had been paying. The treasurer said she did not list the property for sale for delinquent taxes, and gave no notice of delinquency to plaintiff Pannett or defendants Schnitz. Although it may be uncommon as well as without legal authority for the taxing authority to work out a payment plan for delinquent taxes, the fact that there was such a plan brings into question whether the technical deficiency was sufficient to justify termination.

Assuming without deciding that it would be a default sufficient to justify termination, we have the further question of whether Mr. Schnitz should have given notice and made demand for curing of the default before attempting to terminate the contract. This contract is significant not for what it says, but rather for what it fails to say. The contract does not require notice and demand prior to termination. It also does not provide that time is of the essence.

■■ In *Rose v. Dolejs*, 1 Ill. 2d 280, 289-90, 116 N.E.2d 402, the supreme court restated the general rule regarding forfeitures, when it said:

> "Moreover, forfeitures are not favored by courts of equity and parties will be protected against them wherever wrong or injustice will result from their enforcement. It is especially well settled that where the agreement is simply one for the payment of money, a forfeiture of land incurred by the nonperformance of the agreement will be set aside on behalf of the defaulting party or relief will be granted in any other manner made necessary by the circumstances of the case, on the payment of the debt, interest and costs, unless complainant has debarred himself by his own conduct. This doctrine is followed when the failure has not been willfull, and where there is a failure to pay taxes. (*Dodsworth v. Dodsworth*, 254 Ill. 49)."

See also *Miles Homes, Inc. v. Mintjal*, 17 Ill. App. 3d 642, 307 N.E.2d 724.

■■ In *Stuckrath v. Briggs & Turivas*, 329 Ill. 555, 566, 161 N.E. 91, the supreme court discussed the need for notice and demand regarding forfeitures, when it said:

> "The rule requiring notice of forfeiture of a contract for the sale of real estate is based on conduct on the part of the party seeking the benefit of forfeiture which would lead the other party to infer that he was not insisting on time as of the essence of the contract. Under such state of facts the authorities are uniform that notice and demand must be made before the contract may be forfeited."

The court in *Stuckrath v. Briggs & Turivas,* held on the facts of that case, that no notice and demand was required. The court explained its reasoning when it continued:

"Such rule has no application here. There has been no showing whatever in the record that Briggs & Turivas did or said anything to plaintiff in error that would indicate the firm was not insisting upon performance of the contract in accordance with its terms as to the time of payment. On the contrary, the testimony of Turivas was that he informed plaintiff in error on September 15, 1921, when the first payment was due, or the day before, that such payment must be made in accordance with the contract or the contract would be terminated. This was notice of an election to insist on a strict performance of the contract according to its terms. This Briggs & Turivas had a right to do, and unless it by its own acts led plaintiff in error to believe that the forfeiture would not be insisted upon, he knew the contract was terminated." 329 Ill. 555, 566.

*Stuckrath v. Briggs & Turivas* is distinguishable from the case before us on its facts. Here time was not made of the essence to the contract by its terms. Plaintiff and his partner were always late with their payments under the contract, although usually within the 90-day grace period, and defendants tolerated the same. In February 1975, plaintiff was not only late, the partners failed to make a payment within the 90-day grace period. At that time defendants allowed plaintiff to make up the payment without protest or argument. Defendants never notified plaintiff of their intention to begin holding the plaintiff strictly to the contract.

■■ Defendants had indicated to plaintiff, and plaintiff was justified in inferring, that defendants were "not insisting on time is of the essence of the contract." This attempted forfeiture and retaking of possession by defendants was improper.

■■ Defendants argue that plaintiff demonstrated by his actions in February 1976 that he intended to abandon the business, and therefore, the contract, and that forfeiture without notice was permissible.

In *Stuckrath v. Briggs & Turivas,* the court said of abandonment: "A rescission or abandonment of a contract in writing may be deduced from circumstances or a course of conduct clearly evincing abandonment. (*Hayes v. Carey,* 287 Ill. 274; *Lasher v. Loeffler,* 190 id 150; *Cuppy v. Allen,* 176 id. 162; *Hale v. Bryant,* 109 id. 34.)" (329 Ill. 555, 566.)

The facts in this case do not support abandonment. Although there is no question plaintiff was going to close down the restaurant-grocery store, and did close it, that is not the equivalent, necessarily, of abandoning the contract. Plaintiff told defendants that the monthly payments would be

made despite closing of the business. There was no contractual provision requiring plaintiff to continue the business. In view of plaintiff's express affirmation of the contract on February 7, prior to the dispute, and his subsequent attempts to pay the monthly charge both in February and in March 1976, we cannot say that an abandonment had taken place.

■■ For the first time on appeal, defendants attempted to raise a deficiency in the plaintiff's pleadings regarding the forcible entry and detainer statute as a defense to plaintiff's action. No testimony or evidence was taken on the issue at trial, and therefore, the matter has been waived. *Kravis v. Smith Marine, Inc.*, 60 Ill. 2d 141, 324 N.E.2d 417.

The trial court's judgment is reversed; the cause is remanded for such further proceedings as are consistent with this opinion and the forcible entry and detainer act.

Reversed and remanded.

CARTER, P. J., and G. MORAN, J., concur.