(No. 29587.—

HARRY JOHNSON *et al.,* Appellees, *vs.* EMMA R. RIEDLER, Appellant.

*Opinion filed Nov. 20, 1946—Rehearing denied January 20, 1947.*

KENNETH F. SIMPSON, of Chicago, for appellant.

ABDON M. PALLASCH, and KELLAM FOSTER, both of Chicago, for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

Defendant-appellant, Emma R. Riedler, entered into a contract with plaintiffs-appellees Harry and Agnes Johnson

to sell them her residence property located in Chicago. Before the deal was consummated by payment of the purchase price and delivery of a deed, the respective representatives of the parties became involved in a controversy, which in a business transaction seemed to be of little consequence, but as a result thereof the closing of the transaction was delayed and finally resulted in this litigation. The suit was started in the superior court of Cook county and after issues were joined the cause was referred to a master in chancery with directions to report the evidence and his findings. He found plaintiffs failed to prove they had performed their part of the contract and recommended that specific performance be denied. The chancellor sustained exceptions to the master's findings and entered a decree against defendant. Included in the reference was an issue made on defendant's counterclaim to remove a cloud on her title which had been created by plaintiffs' placing a mortgage of record against the property to be conveyed. Relief under the counterclaim was denied. On this appeal defendant asked for review of both matters disposed of by the decree.

Defendant had her property listed for sale with the B. J. Felbinger Company. Negotiations were conducted by the company with plaintiffs in reference to the purchase of defendant's property and the contract in question was drawn. It bore date June 23, 1944. However, plaintiffs did not sign it until the day following its date and defendant did not execute it until several days thereafter. The contract provided that defendant was to furnish plaintiffs a title-guaranty policy issued by the Chicago Title & Trust Company, or the trust company's customary report on title. It also provided that such title paper was to be delivered to plaintiffs at the Felbinger office within fifteen days from the "date hereof." Another clause of the contract defined the phrase "date hereof" to mean date of delivery of the contract. The evidence does not definitely

fix the date defendant signed the contract nor does it fix the date it was delivered to plaintiffs but the issues made by the pleadings leave such uncertainty of no consequence. The consideration specified in the contract was $5200, of which $300 was paid as earnest money, and the remaining $4900 was to be paid by plaintiffs within five days after the title was shown to be good or had been accepted by them. The deed was to be delivered at the same time.

On July 13, the Felbinger company made application to the Chicago Title & Trust Company for a guaranty policy. It is evident the contract had been signed and delivered prior to the making of such application. The trust company did not deliver the title papers to Felbinger's office until August 3. The Felbinger company in turn caused them to be sent to plaintiffs and they received them on August 5. Early in July plaintiffs had made application to the Avondale Building and Loan Association for a loan on this property. The proceeds of the loan were to be used either in the payment of part of the purchase price or making some needed repairs. A mortgage was executed by plaintiffs in favor of the association and placed of record on July 13. When plaintiffs received the title papers from the Felbinger company, they in turn delivered them to Frank Krzykowski who was treasurer of the loan association. He received the papers on August 7.

All material objections to defendant's title had been waived prior to the delivery of the title policy to Krzykowski and no objection was made thereafter. At this point the apparent cause of the delay in closing the transaction should be noted. Sometime prior to the date of August 3, B. J. Felbinger and Krzykowski had a quarrel, the cause of which is not shown. Thereafter, a controversy developed as to whether the payment of the remainder of the purchase price and delivery of the deed should take place at the office of the loan association where Krzykowski was employed or at the Felbinger office, as provided in the con-

tract. It is obvious the feeling engendered by the quarrel influenced the respective parties in their contentions. Plaintiffs attempted to arrange a date with Felbinger for the closing of the transaction, suggesting August 12. There is evidence which indicates that Felbinger did not agree to such date and there is evidence which shows that August 14 was tentatively agreed upon, but there is no question but what plaintiffs at that time were insisting on the deal being closed at the loan association office. It is equally clear that Felbinger did not agree to the change from the terms of the contract and there is no evidence that defendant was consulted in regard to it.

Following the futile attempt nothing was done by either party until August 19 when Felbinger mailed plaintiffs a notice which stated that plaintiffs were in default in the performance of the contract "in that the balance of the purchase price was due within five days after title was shown to be good or accepted by you." It also stated that the earnest money would be forfeited. After plaintiffs received such notice Krzykowski recommended to plaintiffs that they engage a lawyer and arrange for the closing of the transaction. Plaintiffs abandoned their contention that the deal should be closed at the loan association's office and employed Abdon M. Pallasch as their attorney to close the deal at the Felbinger office. Pallasch was not able to give the matter attention prior to August 28, but on that date he initiated certain action which resulted in plaintiffs tendering defendant the balance of the purchase price and requesting a deed. The tender of the purchase price and demand for the deed had been completed by September 10 and this action was started September 25.

Plaintiff Agnes Johnson was called as a witness and at the conclusion of her evidence it was stipulated that if plaintiff Harry Johnson was called his evidence would be in substance the same as Agnes Johnson's. She stated that the first time they consented to the closing of the deal at

the Felbinger office was after they engaged their attorney, August 28; that before they employed a lawyer they expected Krzykowski to handle the details for them. On direct examination she stated that nothing was said as to the place where the deal would be closed when she was arranging with Felbinger for an appointment on August 12, and then on August 14, but on cross-examination she admitted that after the title policy was received she told the Felbinger agency the deal had to be closed at the loan association office and that they replied that the transaction had to be concluded at their office.

It is apparent that consummation of the deal was interfered with by reason of plaintiffs' insistence that it had to occur at the loan office. They contend that Felbinger, while acting as defendant's agent, told them when they were trying to arrange an appointment for August 12 or 14, that he would contact defendant to obtain her approval as to the date and would advise them if such date was agreeable. Plaintiffs did not hear from Felbinger and Mrs. Johnson testified she phoned defendant on August 14 and was told that she (defendant) knew nothing of any arrangement to meet on that date. It is argued that Felbinger was acting within the scope of his authority, that his acts are binding on defendant, and his failure to arrange with defendant for an appointment caused them to breach the contract. From the date the title policy was received on August 7 until counsel was engaged on August 28, plaintiffs were insisting on the deal being closed at the loan office but there is no evidence that Felbinger ever agreed to submit to defendant the controverted question of where the money was to be paid and the deed delivered. Even though it be conceded Felbinger was acting within the scope of his authority when trying to agree upon a date, there remains the objection that it does not appear that he, at any time, agreed to a change of location for the closing transaction or that he represented to plaintiffs

that he would endeavor to obtain defendant's consent to a waiver of that provision of the contract.

Before plaintiffs were entitled to the specific performance of the contract, it was incumbent on them to show they were not in default, that the contract had been fully, fairly and in good faith, performed on their part, that they had complied with its terms and were able, ready and willing to do the future acts provided for in the contract. *Olson* v. *Forsberg*, 332 Ill. 266; *Mitchell* v. *White*, 295 Ill. 135; *Bennett* v. *Burkhalter*, 257 Ill. 572.

Plaintiffs contend that after they employed counsel Felbinger agreed to close the deal notwithstanding the notice of default mailed to them August 19, and that in agreeing to a waiver of their default he was acting within the scope of his agency. The conversations in which it is claimed there was a waiver occurred August 28 and at various times to September 5. There is no claim that defendant was present at any of the conversations or sanctioned anything Felbinger may have said in regard to waiving plaintiffs' default. In fact, it appears that when defendant received a copy of the notice of default Felbinger sent to plaintiffs on August 19, she went to the Felbinger office and demanded all title papers she had left with them.

There is no evidence as to the extent of Felbinger's authority to act for defendant. In the absence of such showing it must be assumed that the authority of the Felbinger agency was limited to finding a purchaser. That being the scope of his authority he could not bind defendant to a waiver of plaintiffs' default of the contract. (*O'Donnell* v. *Henley*, 327 Ill. 406; *Stein* v. *McKinney*, 313 Ill. 84.) The court erred in decreeing specific performance of the contract.

As stated, plaintiffs executed a mortgage instrument which was filed of record against the property in question on July 13. Since plaintiffs are not entitled to specific performance, the mortgage instrument should be removed

418

as a cloud on the title. It is claimed Felbinger consented to the recording of the mortgage but there is no evidence to show he had authority from defendant to agree to the clouding of her title. The prayer of the counterclaim should be allowed.

The decree is reversed and the cause remanded, with directions to grant the prayer of the counterclaim and to dismiss the plaintiffs' complaint for want of equity.

*Reversed and remanded, with directions.*