VERNON HAJECK *et al.*, Plaintiffs-Appellants, *v.* JAMES N. WYRICK *et al.*, Defendants-Appellees.

Second District   No. 83—459

Opinion filed May 15, 1984.—Rehearing denied June 15, 1984.

Peter D. Michling, of Weisz & Weisz, of Woodstock, for appellants.

Duncan Jay Lanum, of McCauley, Weir, Lanum & Papp, of Harvard, for appellees.

JUSTICE NASH delivered the opinion of the court:

Vernon Hajeck and Grace Hajeck (plaintiff-sellers) brought this action for breach of a real estate sales contract seeking recovery of earnest money from James N. Wyrick and Suzanne K. Wyrick (defendant-buyers) and Durbin-Stovall Associates, Inc. (broker), which held the earnest deposit as escrowee. Defendants-buyers counter-claimed for return of the earnest money. The broker was dismissed from the case before trial after depositing the earnest money of $9,500 with the clerk of court. The cause proceeded to jury trial and a

verdict was returned in favor of defendants-buyers for $9,500 on their counterclaim. Plaintiffs-sellers appeal from the judgment denying their motion for judgment notwithstanding the verdict or, in the alternative, a new trial.

Plaintiffs-sellers contend that the evidence established that defendants-buyers breached the real estate sales contract entered between the parties by not giving a notice required by its terms and by refusing to complete the purchase of the subject property when requested, thereby forfeiting the earnest money deposited by them. Defendants-buyers argue that the notice requirement of the contract was waived by plaintiffs-sellers' agent, the real estate broker, and they thus did not breach its terms. Defendants-buyers also argue that principles of unjust enrichment and estoppel prevent forfeiture of their earnest deposit.

The evidence at trial disclosed that plaintiffs-sellers entered into a six-month exclusive listing agreement with the broker on July 24, 1981, for the broker to effect a sale of their 38-acre parcel of vacant farm land. The listing agreement gave the broker the exclusive right to advertise, show and sell the property and provided that the broker was to make a continued effort to sell the property and assist in financing arrangements. Plaintiffs-sellers agreed therein to conduct all negotiations through the broker and pay a commission if the broker sold the property or found a buyer ready, willing and able to purchase it. The listing agreement also provided that the broker's "sole duty is to effect a sale of the property and he is not charged with the custody of the property, its management, maintenance, upkeep or repair."

Through the efforts of Emily Jones, the broker's salesperson, a real estate sales contract was entered into by the parties on August 17, 1981, wherein defendants-buyers agreed to purchase it for $105,000; they deposited $9,500 as earnest money with the broker. In its paragraph 4 the contract contained a mortgage contingency provision which provided as follows:

> "This contract is subject to the condition that Buyer be able to procure within 45 days after the acceptance date a firm commitment for a *** conventional loan to be secured by a mortgage or trust deed on the real estate in the amount of $65,000.00, or such lesser sum as Buyer accepts, with interest not to exceed 12% a year to be amortized over 29 years. *** If, after making every reasonable effort, Buyer is unable to procure such commitment within the time specified herein and so notifies Seller thereof within that time, this contract shall become null and void and all earnest money shall be returned to

Buyer; *if Seller is not so notified, it shall be conclusively presumed that Buyer has secured such commitment or will purchase said property without mortgage financing*; provided that if Seller, at his option, within a like period of time following Buyer's notice, procures for Buyer such a commitment or notifies Buyer that Seller will accept a purchase money mortgage upon the same terms, this contract shall remain in full force and effect." (Emphasis in contract.)

The contract further provided that the time for closing would be "on October 1, 1981, or before, or 20 days after notice that financing has been procured *** unless subsequently mutually agreed otherwise" by the parties. Certain other conditions contained in the contract are also relevant: Condition I provided that "time is of the essence" of the contract. Condition J provided that all notices required under the contract were to be in writing and sent to the parties at the addresses listed for them in the contract. Condition G provided that termination of the contract without fault of the buyer would result in return of the earnest money to him, but if buyer's fault caused termination of the contract, the seller had the option of declaring a forfeiture of the earnest money, which was to be applied first to his expenses and the balance to be retained by seller as liquidated damages. Other conditions of the contract required the seller to deliver to buyer not less than five days before the time set for closing a commitment for title insurance and deliver before closing time a land survey. Plaintiffs-sellers address was listed on the contract as 508 Birch Road, Woodstock, Illinois. There was no provision contained in the contract which authorized the broker to receive notices required thereunder as plaintiffs-sellers agent or to modify the terms of the contract.

Plaintiff, Vernon Hajeck, testified that when he executed the contract it was his understanding that the buyers would apply to a bank where they already had a mortgage for the necessary financing and would be successful in doing so. Hajeck assumed that the closing would occur on October 1, and during August and September he had several communications from Emily Jones from which it appeared that would occur. He further testified that he did not receive a notice from the buyers pursuant to paragraph 4 of the contract that they were unable to procure financing to complete the purchase of the property, and no one contacted the sellers prior to the end of the 45-day period for an extension of time to secure financing. Hajeck first learned on October 12 that the buyers' application for a loan had been denied; at that time he was called to the broker's office and asked if he wished to procure the financing for the buyers, but he declined to

do so. He stated he had been aware that Emily Jones had been looking to other banks for possible financing and had not advised her to cease those efforts. Hajeck agreed that the listing agreement provided that the broker would assist with financing, but did not agree that it gave the broker authority to modify the terms of the real estate contract.

Defendant, James Wyrick, testified that after executing the contract the buyers made application to the bank for a loan to finance the transaction. Processing of the application was delayed because the buyers did not have a current financial statement when they initially applied and it was delivered to the bank about September 24. As of October 1, 1981, the buyers' loan application was still pending. Emily Jones, the broker's salesperson, knew the loan would not be fully processed by that date, and although she had talked with the buyers prior to October 1, she had not suggested any need to seek an extension of the 45-day period.

Defendants-buyers were informed by the bank on October 6 that the loan had been denied and called Emily Jones that same day for her to find other financing, to which they agreed so long as it would be on the same terms as in the contract. Wyrick testified that the failure to give notice in writing to the seller as provided in the contract was due to his ignorance of the requirement because he had not read all of the contract, and also because he had believed notice that he was unable to procure financing was properly given to Ms. Jones as the agent for plaintiffs-sellers. Although Wyrick had only an eighth-grade education, he owned his own business and in the past had engaged in approximately 11 real estate transactions.

On October 9, 1981, plaintiffs-sellers caused a letter to be sent to the buyers advising that they were in default of the contract and requesting that they arrange within seven days for a suitable closing date to complete the purchase of the property. The buyers were further advised that failure to do so might result in legal action to enforce the contract. The buyers failed to respond, and the sellers' attorney wrote to them on October 17 advising that the sellers had, pursuant to the contract, declared a forfeiture and elected to retain the earnest money as damages.

■■ Plaintiffs-sellers' motions for a directed verdict at the close of all the evidence and post-trial motion for judgment *n.o.v.* were denied by the trial court. The standard which trial and reviewing courts must apply in considering a motion for a directed verdict or judgment *n.o.v.* is set forth in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504. Verdicts may be directed and judg-

ments *n.o.v.* granted only where all of the evidence, when viewed in the light most favorable to the party opposing the motion, so overwhelmingly favors the movant that no contrary verdict based upon the evidence could ever stand. We apply that standard to the evidence in this case and conclude that the trial court erred in denying the plaintiff's motions.

Paragraph 4 of the real estate sales contract entered into between the parties required that the buyers procure a mortgage within 45 days after acceptance by the sellers on August 17, 1981; if he was unable to do so and so notified the sellers within that time, the contract would be void and the buyers would be entitled to the return of the earnest money deposit. However, if the buyers failed to give the required notice within the requisite 45-day period, the contract provided that it would be conclusively presumed that the buyers had secured the needed financing or would purchase the property without it. October 1, 1981, was the 45th day and the record is clear that the buyers gave no notice of any kind to the sellers.

■ Such a conclusive presumption binding the parties in the absence of timely notice of inability to secure financing has been given effect by the courts. (*Mouhelis v. Thomas* (1981), 95 Ill. App. 3d 181, 184, 419 N.E.2d 956; *Djomlija v. Urban* (1982), 107 Ill. App. 3d 960, 964, 438 N.E.2d 558.) As the buyers had agreed to these terms, the failure to complete the transaction can only be excused in this case if the broker's salesperson, Emily Jones, was authorized to waive or alter the contract terms requiring the notice, as the buyers argue.

"[T]he essential feature of a broker's employment is to bring parties to a transaction together for the purpose of effecting the transaction." (*Rabin v. Prenzler* (1983), 116 Ill. App. 3d 523, 531, 451 N.E.2d 1331, *appeal denied* (1983), 96 Ill. 2d 565.) While the agency relationship created by a contract of employment between an owner and real estate broker need not be in writing, the broker can only act as agent with consent of the owner, either evidenced by a written contract of employment, oral authorization or by implication from the conduct of the parties. (*Arthur Rubloff & Co. v. Drovers National Bank* (1980), 80 Ill. App. 3d 867, 871, 400 N.E.2d 614; *Bau v. Sobut* (1977), 50 Ill. App. 3d 732, 737, 365 N.E.2d 724.) The listing agreement signed between the broker and plaintiffs-sellers is the contract which created and defined the scope of the broker's authority to act on behalf of plaintiffs-sellers. See *Leiter v. Fleetwood Realty Corp.* (1981), 95 Ill. App. 3d 212, 419 N.E.2d 519.

■ It is apparent the listing agreement did not provide that the broker was appointed as agent for the receipt of any notices required

under the contract to be sent to plaintiff-sellers. Nor did it give the broker authority to modify, alter or waive any of the terms of the contract between the parties. No evidence was presented at trial that the terms of the listing agreement had been subsequently modified to allow for such authority. A brokerage contract is governed by the law generally applicable to contracts (*Bau v. Sobut* (1977), 50 Ill. App. 3d 732, 737), and where there is no ambiguity in its terms, the language of the agreement is the sole criteria of the parties' intentions. (*Althoff Industries, Inc. v. Elgin Medical Center, Inc.* (1981), 95 Ill. App. 3d 517, 520, 420 N.E.2d 800.) While the agreement did provide that the broker would "assist in financing arrangements," it cannot reasonably be contended that it authorized the broker to waive or alter notice requirements of the contract.

■ Where a real estate broker acts without authority on behalf of the property owner, and that action is not later ratified by the owner, then the owner is not bound. (See *In re Estate of Boysen* (1966), 73 Ill. App. 2d 197, 200, 218 N.E.2d 838.) Although plaintiffs-sellers testified they had learned from Emily Jones sometime prior to October 12 that she was trying to obtain information from the buyers' bank as to the status of his loan application, we do not consider that knowledge to constitute a ratification of the claimed waiver or modification by the broker of the time requirement for notice. Nor do we believe the knowledge of the broker before October 1 that the application would not be approved by that date, and the broker's failure to inform the buyers of a need to seek an extension of the 45 days, may be considered a waiver or modification of that provision. Compare *Katz v. Anderson* (1964), 48 Ill. App. 2d 406, 198 N.E.2d 715 (broker's unauthorized signing of real estate contract for owner was ratified by owner's subsequent letter congratulating him for effecting sale).

Defendant-buyer cites a number of cases in his brief relating to agency; however, we find only one which lends any degree of support to his argument. In *Tantillo v. Janus* (1980), 87 Ill. App. 3d 231, 408 N.E.2d 1000, the buyer under a real estate contract was granted specific performance, the court holding that he had not breached the contract by failing to redeem his promissory note for the earnest money with a cashier's check within the time required by the contract. It provided that the earnest money was to be held by the broker until closing, and the court determined that the buyer's untimely delivery to the broker was excused because the broker had overlooked his lack of diligence and knowledge of the delay was imputed to the seller as principal from the broker. *Tantillo v. Janus* is inapposite, however, as

the broker had been expressly appointed under the terms of the real estate contract to be the seller's agent for receipt of the earnest money.

We consider *Horan v. Blowitz* (1958), 13 Ill. 2d 126, 148 N.E.2d 445, to be dispositive. There, the purchaser of real estate sought specific performance of a contract against the seller which provided that it would become void if the buyer failed to obtain mortgage financing within 15 days of the execution of the contract. The buyer failed to obtain financing within the requisite period of time, but argued that no breach occurred because the broker, as agent for the seller, had waived the time requirement. The seller therein testified that he had not given the broker authority to waive or alter the contract terms as to financing and had not been aware the broker had arranged with the buyer for the transaction to be closed despite the failure of timely receipt of financing. The court held that, unless otherwise provided for, a real estate broker has no authority to waive or alter such a contract term. 13 Ill. 2d 126, 132; see also *Johnson v. Riedler* (1946), 395 Ill. 412, 70 N.E.2d 570.

■ We conclude that the broker in the present case had no authority to waive or alter the contract's requirement that notice be given to the sellers by October 1, 1981, that the buyers were unable to obtain financing. Nor do we consider under the evidence presented that the broker sought to waive or modify that requirement of the contract. Because timely notice was not given to sellers, they had the right to rely upon the conclusive presumption of the contract that the buyers would purchase the property and sought to close the transaction. When the buyers failed to respond to that request, they breached the contract, thus permitting forfeiture of the earnest money.

Courts abhor forfeitures on contracts if real injustice would thereby result, but where a forfeiture of earnest money is provided for by the parties and the amount to be forfeited is not an undue sum, the forfeiture will be enforced. (*Curtin v. Ogborn* (1979), 75 Ill. App. 3d 549, 554-55, 394 N.E.2d 593.) The earnest deposit at issue was less than 10% of the selling price in the present case, and principles of unjust enrichment do not apply. Because the terms of the contract requiring written notice that financing had not been procured were not waived or altered by the broker, the affirmative defense of estoppel to that effect should not have been submitted to the jury.

We have considered the other arguments made by both parties and find them to be without merit.

For the foregoing reasons, we reverse and remand this cause with

directions that the verdict of the jury be vacated and judgment notwith-standing that verdict be entered in favor of plaintiffs.

Reversed and remanded with directions.

SEIDENFELD, P.J., and UNVERZAGT, J., concur.