THE PRIME GROUP, INC., *et al.*, Plaintiffs-Appellees, v. NORTHERN TRUST COMPANY, as Trustee, *et al.*, Defendants-Appellants.

First District (6th Division)   No. 1—90—0431

Opinion filed June 21, 1991.

RAKOWSKI, P.J., dissenting.

Joseph & Myers, of Chicago (Michael P. Myers and Jack Joseph, of counsel), for appellants.

Winston & Strawn, of Chicago (Terry M. Grimm, Paul P. Biebel, Jr., and Catherine W. Joyce, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:
Defendants appeal from a judgment entered by the circuit court of Cook County granting to plaintiffs specific performance of a real estate agreement. On appeal, defendants contend that the trial court erroneously found plaintiffs' September 1988 payment timely and erroneously granted specific performance in favor of plaintiffs.

On December 12, 1986, the parties entered into a real estate purchase agreement (Agreement) for plaintiffs' purchase from defendants of 63.8 acres of land in unincorporated Lake County. The Agreement gave plaintiffs 60 days from the date of execution (feasibility period) to review the title and the feasibility of developing the property, during which time plaintiffs could terminate the Agreement at their discretion. Pursuant to the parties' subsequent agreement and plaintiffs' $7,500 payment, the feasibility period was extended from 60 to 150 days.

The issue on appeal concerns the interpretation of paragraph 9 of the Agreement, which outlined conditions precedent to closing and granted plaintiffs the right to extend the period for fulfillment of the conditions. These conditions precedent included: rezoning of property to permit plaintiffs' purported development; approval of plans by appropriate government agencies and authorities; and con-

firmation of adequate utilities. The provisions at issue, set forth in paragraph 9, provided in pertinent part:

"Purchaser shall notify Seller no later than three hundred (300) days following the expiration of the feasibility period whether the aforementioned conditions have been satisfied or that the same have been waived by Purchaser. If Purchaser shall notify Seller that the aforementioned conditions have not been satisfied and have not been waived by Purchaser prior to such date, this Agreement and all rights, obligations and liabilities hereunder shall terminate; provided, however, that, if all of the aforementioned conditions have not been satisfied or waived by Purchaser on or before such date, Purchaser, at Purchaser's sole and absolute discretion, may extend such date for periods of thirty (30) days each for no more than ten (10) periods by written notice from Purchaser to Seller and by payment to Beneficiary of the sum of Five Thousand and no/100 Dollars ($5000.00) (the Extension Payment) for each thirty-day extension."

In October 1987, when the Lake County Zoning Board of Appeals recommended denial of plaintiffs' application for rezoning, plaintiffs began to explore alternatives to their original development plan for the property. In November 1987, plaintiffs refused defendants' request for written waiver of the rezoning contingency.

Pursuant to the Agreement, and as plaintiffs' December 30, 1987, letter acknowledged, the time within which the conditions could be waived or satisfied would expire on March 10, 1988. On March 9, 1988, plaintiffs delivered to defendants written notice of their intent to extend the date by 30 days and the required payment. On April 8, 1988, plaintiffs delivered a second notice and tendered payment to extend the date. In May, June, July and August, plaintiffs delivered notices and payments to defendants before the prior 30-day period elapsed. A letter enclosed with the August payment acknowledged that the Agreement was extended until September 6, 1988. On September 8, 1988, plaintiffs tendered another extension payment. Defendants returned the notice and payment to plaintiffs on the following day and informed plaintiffs that the Agreement had terminated. Although plaintiffs informed defendants on September 12, 1988, that they were willing to close the transaction on October 31, 1988, defendants refused to close, maintaining that the Agreement had been terminated.

Plaintiffs sought a declaration of the parties' rights under the Agreement and a judgment of specific performance. Defendants

subsequently moved for summary judgment. The parties filed a stipulation of uncontested facts and agreed to an order allowing the trial court to render a decision based solely upon the record before it.

On January 4, 1990, the trial court held that the Agreement did not specify a date for the delivery of extension payments or for the notice of extension. Because no date was specified, the court held that plaintiffs' September 8, 1988, extension payment was tendered within a commercially reasonable time. The court accordingly granted specific performance in favor of plaintiffs.

On appeal, defendants argue that the terms of the Agreement required plaintiffs to tender the payment prior to the expiration of the prior period. Alternatively, defendants assert that the Agreement was an option contract and, as such, required strict compliance with time limitations. Further, defendants maintain that because plaintiffs failed to make a timely payment in September 1988, the Agreement terminated and plaintiffs are not entitled to enforce it.

■■ We note initially that the granting of a decree of specific performance lies in the trial court's sound judicial discretion and will not be disturbed on appeal absent an abuse of discretion. (*Chariot Holdings, Ltd. v. Eastmet Corp.* (1987), 153 Ill. App. 3d 50, 505 N.E.2d 1076.) Further, we will uphold the trial court's judgment if it is justified in the law for any reason that appears in the record. *Kostur v. Indiana Insurance Co.* (1989), 192 Ill. App. 3d 859, 549 N.E.2d 685.

■ We first consider defendants' argument that the Agreement unambiguously required plaintiffs to tender an extension payment before the prior period expired. In construing a contract's terms, the primary objective is to give effect to the parties' intentions. (*Continental Assurance Co. v. Commonwealth Edison Co.* (1990), 194 Ill. App. 3d 1085, 551 N.E.2d 1054.) A court must seek a reasonable interpretation, and a strong presumption exists against provisions which could easily have been included in the agreement. *Ebrahim v. Checker Taxi Co.* (1984), 128 Ill. App. 3d 906, 471 N.E.2d 632.

■■ In our view, paragraph 9 did not require plaintiffs to tender their notice and payment before the prior period ended. The provision unequivocally gave plaintiffs 300 days after the feasibility period to inform defendants whether the conditions have been satisfied or waived. The provision then entitled plaintiffs to "no more than" 10 30-day extensions if plaintiffs notified defendants and paid

$5,000 to the beneficiary. Despite the Agreement's precision as to the number and length of extensions and the amount of the payments, the Agreement failed to specify when such payment was due. The provision simply did not indicate when payment must be received, let alone state that it must be received prior to the end of the extension period. Such interpretation was not "plain and obvious" from the language. (*J.M. Beals Enterprises, Inc. v. Industrial Hard Chrome, Ltd.* (1990), 194 Ill. App. 3d 744, 748, 551 N.E.2d 340, 342.) Because the parties declined to set forth time limitations, we, therefore, cannot conclude that the Agreement required payment before the prior period expired. In the absence of a date, the trial court properly implied a reasonable time. *Murphy v. Roppolo-Prendergast Builders, Inc.* (1983), 117 Ill. App. 3d 415, 453 N.E.2d 846.

Nor do we believe that plaintiffs' conduct evidences the parties' intention that payment be tendered before the prior period expired. Defendants argue that by making payments in March through August before the prior extension period passed, plaintiffs demonstrated that they believed such payment was due before the extension ended. However, such payments are equally consistent with an intention to make payment within a commercially reasonable time, and in the absence of express language requiring notice and payments by a particular time, we do not conclude that the parties so intended.

As additional support for their argument that the Agreement required plaintiffs to tender payment earlier, defendants rely upon the "time is of the essence" clause and their characterization of the Agreement as an option contract. Neither argument is persuasive.

Defendants maintain that the Agreement was in substance an option contract and plaintiffs' failure to tender a timely extension payment terminated both the option and the Agreement and precluded specific performance for plaintiffs. We disagree.

■ An option contract is an agreement in which one binds himself to perform a certain act, at the sole power and discretion of optionee to accept upon terms specified at which time it is converted from a bilateral to a unilateral contract. (*Stull v. Hicks* (1978), 59 Ill. App. 3d 665, 375 N.E.2d 981.) Moreover, an option contract has two elements: (1) an offer to do something or to forebear, which does not become a contract until accepted; and (2) an agreement to leave offer open for a specified or reasonable time. *Hamilton Bancshares, Inc. v. Leroy* (1985), 131 Ill. App. 3d 907, 476 N.E.2d 788.

■ The Agreement here obligated both parties to perform and became a valid, bilateral contract upon execution on December 12, 1988. The extension provisions did not, as defendants suggest, transform the Agreement into an option contract. Paragraph 9 merely set forth conditions precedent to plaintiffs' performance and allowed plaintiffs to extend the period during which the conditions for closing had to be satisfied. Indeed, plaintiffs were bound under the Agreement to close when rezoning was approved or when plaintiffs waived the condition. The Agreement itself is entitled "Real Estate Purchase Agreement," and contains a reference to earnest money. While the caption is not controlling, it is probative. The caption and the Agreement's reference to "earnest money" refute defendants' characterization of the Agreement as an option contract. See *Summers v. Hedenberg* (1916), 198 Ill. App. 460.

Nor do we believe that plaintiffs treated the Agreement as an option contract. Defendants mischaracterize plaintiffs' refusal in late 1987 to waive the zoning contingencies as giving plaintiffs an "unfettered right" to terminate the Agreement. We believe plaintiffs' refusal to tender a written waiver merely demonstrated their decision not to waive the contingency until they considered other options and plaintiffs' exercise of their right to extend the period under the Agreement. Indeed, under the Agreement plaintiffs could extend the period until March 1988 and then for 300 additional days. The uncontested facts also reveal that plaintiffs were considering alternatives to their original development plan.

■ We also refuse to apply the "time is of the essence" clause from paragraph 17 to the extension provision in paragraph 9, as defendants urge, because we conclude that the parties did not intend time to be of the essence in the extension provision. Even though a contract expressly stipulates that time is of the essence, the court will look at the parties' intentions, as seen in the language and the circumstances surrounding the agreement, in order to determine whether to strictly enforce the provision. (*Anest v. Bailey* (1990), 198 Ill. App. 3d 740, 556 N.E.2d 280.) Moreover, we will not give effect to such clause unless it clearly applies to the contract requirement against which it is sought to be applied. 81 C.J.S. *Specific Performance* §121 (1977).

The language of paragraph 9 and the circumstances belie defendants' interpretation that time is of the essence in the extension provision. First, the clause providing that time was of the essence appeared in paragraph 17, not paragraph 9, and related to the ultimate closing of the purchase rather than the extension pay-

ments. (See *Jackson v. Holmes* (1975), 307 So. 2d 470.) Second, as previously noted, paragraph 9 did not specify when plaintiffs must make extension payments. The provision merely detailed how plaintiffs secured an extension. Indeed, the Agreement granted plaintiffs 300 days, then provided for 10 30-day extensions, totalling another 300 days. The Agreement by its very terms allowed numerous extensions to closing. Certainly, if time were of the essence for making extension payments, at minimum the provision would have expressly set forth a due date. We cannot therefore conclude that the parties intended to apply the general "time" clause of paragraph 17 to the provision at issue.

■ We also reject defendants' assertion that the contract terminated when plaintiffs failed to tender payment before the prior extension period expired. Even assuming that the September payment was untimely, the result would not be termination. We reject the argument that the contract was terminated by the mere passage of time. Two provisions of paragraph 9 expressly required the plaintiffs-purchasers' affirmative act to terminate the Agreement. They provided:

> "*If Purchaser shall notify Seller* that the aforementioned conditions have not been satisfied and have not been waived by Purchaser prior to such date, this Agreement and all rights, obligations and liabilities hereunder shall terminate." (Emphasis added.)

> "If Purchaser determines that there is an impediment to Purchaser's closing which Purchaser is not able or willing to attempt to overcome, *Purchaser shall so notify Seller and Beneficiary* within a reasonable time, and upon such notice, this Agreement shall terminate; and, if Purchaser does not so notify Seller and Beneficiary within a reasonable time, Purchaser shall be deemed to waive its right not to close by reason of such impediment." (Emphasis added.)

Plaintiffs here never informed defendants that the conditions were not met or that plaintiffs refused to waive the conditions, despite defendants' request for a written waiver. We do not believe that the anticipated denial by the zoning board to rezone the premises and plaintiffs' subsequent withdrawal of their application constitute such notification by plaintiffs sufficient to terminate the Agreement. Nor do we believe that plaintiffs' letters, dated November 19, 1987, December 30, 1987, and August 5, 1988, result in termination of the Agreement. Rather, they show plaintiffs' difficulty in proceeding with their initial plan and their recognition that the Agreement allowed them extensions.

To find otherwise would result in an illogical reading of the Agreement. By the Agreement's own terms, it did not terminate.

■ ■ Finally, we note that forfeitures are disfavored and courts will protect against them where injustice will result from their enforcement. (*Hajeck v. Wyrick* (1984), 124 Ill. App. 3d 210, 463 N.E.2d 1348.) We find *Rose v. Dolejs* (1953), 1 Ill. 2d 280, 116 N.E.2d 402, and *Chariot Holdings* instructive. Our supreme court in *Rose* refused to allow forfeiture of a land sale contract because of a late payment, stating: "It is especially well settled that where the agreement is simply one for the payment of money, a forfeiture of land incurred by the nonperformance of the agreement will be set aside on behalf of the defaulting party or relief will be granted in any other manner made necessary by the circumstances of the case ***." *Rose*, 1 Ill. 2d at 290, 116 N.E.2d at 409.

Similarly, in *Chariot Holdings*, this court upheld the trial court's specific performance decree where it found that the sellers were not prejudiced by the time delay. The parties' agreement required purchaser to have funds "immediately available" at closing. Some of the money, however, was placed in escrow for five days. This court concluded that the five-day delay was reasonable and did not warrant termination of the contract, expressly approving the trial court's focus on the lack of prejudice caused by the delay. In so doing, the court described time requirements as "accessory rather than central aspects of most contracts." *Chariot Holdings*, 153 Ill. App. 3d at 58, 505 N.E.2d at 1082.

■■ Under *Rose* and *Chariot Holdings*, the trial court properly granted specific performance and avoided forfeiture. If there was a "due date," a two-day delay was substantially insignificant in light of the contract's provisions allowing numerous delays. Most significantly, defendants will receive the bargained-for purchase price, the full benefit of their bargain, if the Agreement is enforced. (*Aden v. Alwardt* (1979), 76 Ill. App. 3d 54, 59, 394 N.E.2d 716, 719 ("most important" factor in granting relief from forfeiture).) Plaintiffs, on the other hand, would lose the $62,500 paid and their rights to own the land, without any evidence showing that the delay harmed defendants. (The $62,500 expended consists of $25,000 in earnest money, $7,500 for extension of feasibility period, and $30,000 for six extension payments of $5,000 per month.) Defendants distinguish *Chariot Holdings* on the ground that the buyer there was committed to complete the transaction, whereas plaintiffs here merely tried to extend the time within which to decide whether to enter the Agreement. We disagree because, as indicated above, we find that plaintiffs were obligated under the contract to perform and any attempts to extend the time period were authorized by the Agreement itself.

In summary, the trial court's finding that plaintiffs acted within a commercially reasonable time is not against the manifest weight of the evidence. The remedy of specific performance was within the trial court's sound discretion and is accordingly affirmed.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

EGAN, J., concurs.

PRESIDING JUSTICE RAKOWSKI, dissenting:

Because the majority opinion omits certain facts which I believe are critical to the disposition of this case, a brief factual statement is necessary.

On December 12, 1986, the parties entered into a real estate purchase agreement (Agreement) whereby plaintiffs were obligated to purchase and defendants to sell 63.8 acres of land in unincorporated Lake County. The Agreement provided that plaintiffs had 60 days from the date of execution (feasibility period) to review the title as well as the feasibility of the properties' development. Pursuant to the parties' subsequent agreement and plaintiffs' $7,500 payment, the feasibility period was extended from 60 to 150 days. Paragraph 9 of the agreement states in pertinent part as follows:

> "Purchaser shall notify Seller no later than three hundred (300) days following the expiration of the feasibility period whether the aforementioned conditions have been satisfied or that the same have been waived by Purchaser. If Purchaser shall notify Seller that the aforementioned conditions have not been satisfied and have not been waived by Purchaser prior to such date, this Agreement and all rights, obligations and liabilities hereunder shall terminate; provided, however, that, if all of the aforementioned conditions have not been satisfied or waived by Purchaser on or before such date, Purchaser, at Purchaser's sole and absolute discretion, may extend such date for periods of thirty (30) days each for no more than ten (10) periods by written notice from Purchaser to Seller and by the payment to Beneficiary of the sum of Five Thousand and no/100 Dollars ($5000.00) (the Extension Payment) for each thirty-day extension."

The parties agree that adding the 150-day feasibility period to the 300-day period provided for in the contract obtains a date of March

10, 1988. Therefore, this is the date referred to in the contract wherein it states "[i]f Purchaser shall notify Seller that the aforementioned conditions have not been satisfied and have not been waived by Purchaser prior to *such date,* this Agreement and all rights, obligations and liabilities hereunder shall terminate." (Emphasis added.) There is no question that prior to *"such date"* (March 10, 1988) the purchaser notified the seller that aforesaid condition had not been satisfied and waived. This fact is evidenced by the following:

(1) On October 9, 1987, the Lake County Zoning Board of Appeals recommended a denial of the application to rezone the premises.

(2) On November 19, 1987, Prime sent a letter to counsel for the defendants, stating:

> "Although at the present time, it appears unlikely that Prime will receive approval from Lake County for the rezoning of the property to permit the development thereon of single-family residences on lots no larger than two (2) acres Prime cannot waive the rezoning contingency, thereby restricting its options with respect to the property."

(3) That prior to any action being taken by the board of trustees of Lake County on the rezoning application, Prime withdrew its application because of the unfavorable recommendation of the Lake County Board of Appeals.

(4) On December 30, 1987, Prime stated in a letter to defendants:

> "If, despite Prime's efforts, the conditions are not satisfied on or before March 10, 1988, Prime has the option to terminate the agreement or to extend the period during which the conditions may be satisfied by up to ten thirty-day periods."

Thus, according to its express and unambiguous terms, the contract would terminate on March 10, 1988, unless purchaser

> "extend[ed] such date for periods of thirty (30) days each for no more than ten (10) periods by written notice from Purchaser to Seller and by payment to Beneficiary of the sum of Five Thousand and No/100 Hundred Dollars ($5,000.00) (the Extension Payment) for each thirty-day extension."

On March 9, 1988, plaintiffs hand delivered a written notice of their intent to extend the Agreement for 30 days along with the required payment. On April 8, 1988, plaintiffs hand delivered a second notice and payment extending the Agreement until May 9, 1988. Plaintiffs then delivered a timely extension notice and payment in May, June, July and August. With the August notice and payment, plaintiffs enclosed a letter stating that the Agreement was extended until September 6, 1988. However, the following month plaintiffs did

not deliver an extension notice or payment until September 8, 1988, which was two days after the Agreement had expired. When defendants received the late notice and payment, they returned them and informed plaintiffs that the Agreement had terminated.

The majority takes the position that "paragraph 9 did not require plaintiffs to tender their notice and payment before the prior period ended" because "the Agreement failed to specify when such payment was due." 215 Ill. App. 3d at 1070.

I respectfully submit that the majority position begs the question. It is crystal clear that the extension was to expire on September 6, 1988. In fact Prime, with its August notice and payment, enclosed a letter stating that the Agreement was extended until September 6, 1988. That date came and passed without delivery of either the extension notice or payment. This fact, under the unambiguous terms of the Agreement, effected a termination.

It seems axiomatic that an agreement, once terminated according to its express and unambiguous terms, cannot be later extended without the agreement of both parties. The very nature of an extension is to continue what is presently in effect. At the risk of being repetitive, I must again emphasize that the Agreement terminated before any attempt at an extension was made. The majority, in effect, causes resurrection of the Agreement under the guise of extension.

The majority opinion also states:

"Even assuming that the September payment was untimely, the result would not be termination. We reject the argument that the contract was terminated by the mere passage of time. Two provisions of paragraph 9 expressly required the plaintiffs-purchasers' affirmative act to terminate the Agreement.

* * *

Plaintiffs here never informed defendants that the conditions were not met or that plaintiffs refused to waive the conditions, despite defendants' request for a written waiver. *** By the Agreement's own terms, it did not terminate." 215 Ill. App. 3d at 1072-73.

With respect to this statement, I suggest that the majority opinion is mistaken.

Rudnick's deposition exhibit No. 26 is a letter of August 5, 1988, from Robert Rudnick, vice-president and general counsel for Prime, to the defendants which states in relevant part as follows:

"Please be advised that, as of the date hereof, the conditions to Prime's obligation under the Agreement *have not been satisfied or waived.* Furthermore, please be advised that, pursuant

to paragraph 9 of the agreement, Prime hereby elects to extend the date during which such conditions must be satisfied by thirty (30) days. In connection [*sic*] such extension, I have enclosed herewith a check payable to Howard Pomper and Barbara Pomper in the amount of $5,000.00, which represents an 'Extension Payment' as that term is defined in paragraph 9 of the Agreement.

Based on my calculations, Prime now has until September 6, 1988 to satisfy the conditions set forth in the Agreement, and has the right to extend the period to satisfy the conditions by four (4) additional thirty-day periods." (Emphasis added.)

Not only does this letter state that the conditions had not either been satisfied or waived, it also implies that Prime had until September 6, 1988, to either satisfy or waive the conditions or the Agreement would terminate.

Finally, I find that the conduct of the parties clearly evinced the intent that if the conditions were not either satisfied or waived prior to March 10, 1988, the Agreement would terminate.

Under the Agreement, the time within which the conditions precedent could be satisfied or waived terminated on March 10, 1988. On March 9, 1988, the plaintiffs hand delivered a notice and payment for 30 days' extension which was effective until April 9, 1988. The day before this extension expired, plaintiffs delivered another extension notice and payment which was effective until May 9, 1988. Plaintiffs delivered a timely extension notice and payment on May 9, 1988, as well as on June 8, 1988, July 8, 1988, and August 5, 1988. In the August extension notice, plaintiffs acknowledged that this extension period was effective until September 6, 1988. However, they did not deliver a notice and extension payment until September 8, 1988. On September 9, 1988, defendants returned the extension payment to plaintiffs and informed them that the Agreement had terminated. Because plaintiffs made six timely extension payments and also acknowledged that the August extension period expired on September 6, 1988, I submit that their conduct demonstrated that they construed the provisions of the Agreement to require that an extension payment and notice for subsequent extensions were due prior to the expiration of the current period.

For all the foregoing reasons, I would reverse the judgment of the circuit court.