**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0553n.06

No. 09-5123

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Aug 26, 2010**

LEONARD GREEN, Clerk

| | |
|---|---|
| MARK NAIYU SUN, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE EASTERN |
| CM PRODUCTS, INC.; CHICAGO METALLIC | ) DISTRICT OF KENTUCKY |
| PRODUCTS, INC., | ) |
| | ) |
| Defendants-Appellees. | ) |

Before:     KEITH, COLE, and GIBBONS, Circuit Judges.

**DAMON J. KEITH, Circuit Judge.**  Appellant Mark Naiyu Sun ("Sun") sued Appellee CM Products, Inc. ("CM"), alleging that CM breached its oral contract with him and violated the implied covenant of good faith and fair dealing.  Sun claims that CM retained him to assist in the purchase of Chinese aluminum foil products from Loften Aluminum Foil Industry Company ("Loften"), and that he was to receive a commission in exchange for his services.  Upon learning that CM had bypassed him and directly contacted Loften to discuss purchasing foil products, Sun filed this lawsuit.  At the close of discovery, the district court granted CM's motion for summary judgment on Sun's claims against it, and Sun filed a timely appeal.  For the reasons discussed below, we **REVERSE**.

I

CM is a manufacturer of recyclable aluminum foil containers and plastic packaging products, and is a subsidiary of Chicago Metallic Products, Inc., which is located in Lake Zurich, Illinois. On July 5, 2006, Sun had a telephone conversation with Ron Kelly ("Kelly"), CM's Director of Purchasing, during which Sun claims that the parties entered into an oral contract for Sun's brokering services. Sun claims that in exchange for introducing CM to a Chinese aluminum foil manufacturer, Loften, he was to receive a commission for any purchases that CM made from that manufacturer. Additionally, CM would be prohibited from contacting Loften directly without his assistance. Sun had sent an email to Kelly, stating that he brokers transactions between Chinese aluminum foil manufacturers and inviting Kelly to contact him. He introduced Kelly to Loften's products in this email. Kelly responded by stating that "[w]e currently do not import household foils but are strongly considering" it, inquired about Sun's availability for a meeting, and requested price quotations. (R. 77-2, Ex. A-1, Email Exchange at 10.)

Sun emailed Kelly, with price quotations for "food service roll foil," "food service roll foil premium," and "interfolded foil sheets." The price quotation dated July 5, 2006, stated that Sun International Company, Sun's brokering company, would receive a five percent commission fee. After receiving the quotations from Sun, on July 5, 2006, Kelly sent an email to Sun stating that CM "would like the attached list quoted delivered to Lake Zurich, IL." (R. 77-2, Ex. A-1, Email Exchange at 11.) On July 18, 2006, Kelly requested that Sun provide "quote prices DDP Lake Zurich." (*Id.* at 16.) DDP is the international trade term for "delivery duty paid."[1] Sun responded

---

[1] *See* World Class Shipping, http://www.worldclassshipping.c om/ incoterm_ddp.html (last visited May 31, 2010). DDP is a term published by the International Chamber of Commerce that is widely used in international trade. *See* Appellant's Br. at 2 (citing use of DDP by which is detailed

to Kelly's request for a DDP Lake Zurich quote on July 17, 2006. Kelly emailed Sun on August 10, 2006, stating that Sun's quotations were helpful and that CM needed to "gauge customer requirements and determine the size of the market." (R. 89, Ex. R, Email Exchange at 13.)

Sometime in late summer or early fall of 2006, Sun claims that CM contacted Loften directly regarding the purchase of foil products. Sun claims that Ted Leung of CM began contacting Loften on its behalf. Leung did not begin his employment with CM until September 2006. On September 22, 2006, Sun emailed Kelly stating that he became aware of CM's efforts to contact Loften directly and stated that Kelly was engaging in unfair business practices. Kelly responded to Sun's email by stating that CM did not have contact with Loften, and that it was simply exploring its options with a variety of brokers and suppliers. Soon after receiving this correspondence from Sun, in October 2006, CM retained China Smart Sourcing, an Illinois and Shanghai-based sourcing firm, to assist with the identification, selection, and negotiation with Chinese manufacturers. Frank Cai of China Smart Sourcing assisted in the ordering and shipping of products from Loften to CM. Since 2006, Loften has manufactured sample aluminum foil coil products for CM's inspection. CM claims that its relationship with Loften is the result of the work of Frank Cai of China Smart Sourcing and of CM, not the efforts of Sun.

On April 1, 2007, Sun emailed Kelly and stated that he was entitled to a commission of five-percent of the value of the contract that CM and Loften had entered for 1,800 metric tons of aluminum, and he calculated his commission as $342,000. Kelly responded by stating that CM's

---

in International Chambers of Commerce Incoterms, http://www.iccwbo.org/incoterms/preambles/pdf/DDP.pdf (last visited May 31, 2010)).

business with Loften had nothing to do with Sun, and that Sun had merely provided him with price quotations. Kelly emailed Lenny Liu, Loften's Export Manager, stating that Sun claimed he had an "exclusive right to represent Loften for all products." (R. 77-3, Ex. B-1, Email Exchange at 5.) Liu confirmed that Sun was not a Loften agent although Sun had sent an inquiry to Loften before Liu joined the company in September 2006. On July 7, 2007, CM and Loften entered into a sales contract for "aluminum container foil."

At the close of discovery, CM moved for summary judgment, and the district court granted its motion. The court noted that the alleged contract failed to specify "critical terms for any broker contract – when the contract would begin, how long it would last, what specific services the broker would provide, and how his commission would be determined." (R. 91, Order at 10.)

## II.

### A.       Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*. *See Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006)). Summary judgment is only appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. 56(c). "In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *See Jones v. Potter*, 488 F.3d 397, 402-03 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**B.      Choice of Law**

This case was brought pursuant to 28 U.S.C. §1332 as a diversity of citizenship lawsuit. In a diversity action, the choice of law principles of the forum state apply. *See Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009). Accordingly, Kentucky choice of law principles apply here because Sun brought this action in the Eastern District of Kentucky.

Under Kentucky law, the law of the state with "the most significant relationship to the transaction and the parties" and "the greatest concern with the specific issue raised in the litigation" applies. *Breeding v. Massachusetts Indem. & Life Ins. Co.*, 633 S.W.2d 717, 719 (Ky. 1982); *see also Lewis v. American Family Ins. Group*, 555 S.W.2d 579, 581 (Ky. 1977). Sun claims that the oral contract was formed during a telephone conversation on July 5, 2006, between himself in Kentucky and Kelly in Illinois. Neither state has a greater connection to the alleged contract in this respect. However, any goods ordered by CM would be delivered to CM's place of business in Illinois, and CM would have processed the goods in Illinois. In light of this connection to Illinois, the district court properly applied Illinois substantive law to construe the alleged contract between Sun and CM.

**C.      Enforceability of the Alleged Contract**

An oral agreement is enforceable under Illinois law if there is an offer, acceptance, and meeting of the minds regarding the terms of the agreement. *See Quinlan v. Stouffe*, 823 N.E. 2d 597, 603 (Ill. App. Ct. 2005). The essential terms of the contract must be "reasonably certain." *Lewis-Kearns v. Mayflower Transit, Inc.*, 932 F. Supp. 1061, 1070 (N. D. Ill. 1996) (citing *Caporale v. Mar Les, Inc.*, 656 F. 2d 242, 245 (7th Cir. 1981)). An oral agreement must "meet the same requirements

as a written contract . . . including the requirements that the subject matter be sufficiently identified." *Ashline v. Verble*, 370 N.E. 2d 613, 615 (Ill. 1977). "When material terms and conditions are not acscertainable, there is no enforceable contract, even if the intent to contract is present." *Midwest Builder Distrib., Inc. v. Lord and Essex, Inc.*, 891 N.E. 2d 1, 16 (Ill. App. Dist. 1 2007) (quoting *Wagner Excello Foods, Inc. v. Fearn Int'l Inc.*, 601 N.E. 2d 956, 960 (Mich. 1992)). However, "[e]ven though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." *Id.* (citation omitted).

The district court held that no enforceable contract existed because the oral agreement did not "specify the duration of the contract, the specific nature of the services Sun would provide, or perhaps most tellingly, the price of his services." (R. 95, Order at 11.) These factual findings by the district court were erroneous. The July 5, 2006 price quotation indicated the commission percentage that Sun would receive, the international trade definition for DDP outlines the obligations that Sun would undergo, and the general obligations of the parties appear to be identifiable under the alleged contract. The only ambiguity concerns the duration of the alleged contract. "However, a contract 'is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do.'" *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 515 N.E.2d 61, 65 (Ill. App. Ct. 1987).

According to Sun, he was to introduce CM to a Chinese manufacturer and be the sole contact between CM and the manufacturer. The contract would include the sale of aluminum foil products,

DDP to Lake Zurich, and there would be a five percent commission as noted on the July 5, 2006 price quotation. There is a genuine issue of material fact concerning the existence of a contract, the credibility and weight of the evidence presented by Sun, and whether Sun fulfilled the terms of the alleged agreement by providing Loften's web address and submitting multiple quotations to Kelly. Kelly's initial response to Sun, denying any contact with Loften, suggests that Kelly recognized that he was expected to refrain from contacting Loften directly. Further, there is continuing ambiguity concerning CM's contact with Loften after Sun provided the quotations to it. The Loften and CM employees, other than Kelly, who should be knowledgeable about this subject, Leung and Liu, did not begin their employment until September 2006, after Sun claims that alleged breach of contract occurred.

A reasonable juror could credit Sun's version of the facts and find that there was a reasonably discernable agreement here, and that Kelly considered himself bound by its terms. It is for the fact-finder to make such credibility determinations. "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Keweenaw v. Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (citation omitted). "It is error for the district court to resolve credibility issues against the nonmovant: 'In effect, any direct evidence offered by the plaintiff in response to a summary judgement motion must be accepted as true. The district errs by granting summary judgment for defendant where issue of credibility are determinative of the case.'" *Centra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). CM argues that its relationship with Loften relates to the provision of "foil coil," not the food service foil provided in the price quotations. However, Sun's

initial email to CM pertained to aluminum products in general, and Sun claims that his July 5, 2006 telephone conversation with Kelly related to the sale of aluminum products generally. There is sufficient evidence for a reasonable fact-finder to conclude that a contract existed, and that Sun was expected to broker a deal pertaining to aluminum foil products in general as indicated in his initial email. Accordingly, summary judgment is inappropriate.

**D.      Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing**

As the district court noted, "Sun's claim for breach of the implied covenant of good faith and fair dealing clearly arises out of the alleged breach of contract by CM . . . ." (R. 91, Order, at 13.) Under Illinois law, the covenant of good faith and fair dealing is not an independent source for relief but instead "guides the construction of explicit terms in an [already existing] agreement." *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992) (citing Illinois case law). While understanding the covenant of good faith and fair dealing is relevant in reviewing the alleged contract between Sun and CM, it is not an independent cause of action. To the extent that Sun asserts a separate basis of recovery based on a breach of the covenant of good faith and fair dealing, summary judgment concerning such a claim is appropriate.

III.

For the aforementioned reasons, we **REVERSE** the district court's grant of summary judgment on Sun's breach of contract claim.

**JULIA SMITH GIBBONS, concurring in part and dissenting in part.** I concur with Judge Keith's conclusions that Illinois state law applies to this matter and that summary judgment is appropriate on Sun's covenant-of-good-faith claim, but I respectfully dissent from his conclusion that a genuine issue of material fact remains with respect to Sun's breach-of-contract claim. The two pieces of evidence upon which the majority relies in so finding are insufficient to demonstrate that a contract exists and inappropriate for consideration as evidence of contract formation. Because the record indicates that no contract was formed between Sun and CM Products, I would affirm the district court's grant of summary judgment to CM Products on this claim.

Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). Thus, in order for Sun to prevail at trial on his breach-of-contract claim, he must prove the element that an enforceable contract existed. As the district court correctly determined, Sun has not and cannot demonstrate that the parties formed such a contract. *See Sun v. CM Prods., Inc.*, No. 5:07-cv-227-JMH, 2009 WL 482523 (E.D. Ky. Feb. 25, 2009).

An oral contract, like a written contract, is enforceable only if there is an offer, acceptance, and a meeting of the minds regarding the material terms. *See Quinlan v. Stouffe*, 823 N.E.2d 597, 603 (Ill. Ct. App. 2005) (citation omitted). The "essential terms of the contract must be definite and certain," which is satisfied only "if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have

agreed to do." *Id.* (internal quotation marks and citations omitted). The majority finds that "the general obligations of the parties appear identifiable under the alleged contract" and that "[t]he only ambiguity concerns the duration of the alleged contract." Slip Op. at 6. I respectfully disagree.

First, Sun does not present evidence sufficient to establish an enforceable contract. Although Sun makes numerous unsupported arguments and accusations, the only evidence in the record pertaining to contract formation is contained in various emails exchanged by the parties. Those certainly do not reflect offer, acceptance, meeting of the minds, or definite and certain terms. Moreover, even if we assume that Sun's baseless allegations could be supported by evidence, his description of the contract is insufficient to establish one. In response to defendants' interrogatory asking the "specific terms" of the alleged contract, Sun stated:

> The terms of the contract were that Sun would convey CM Packaging inquiries to Loften Aluminum Foil Industry Co. LTD. Sun International Company would get Loften Aluminum Foil Industry Co.'s quotation, would add Sun's commission fee to the quotation, and would send the quotation to CM Packaging. Mark Sun also explicitly told CM Packaging that without Sun involvement, CM Packaging could neither contact nor deal with the company that Sun introduced.

In contrast, in his brief before this court, Sun provided a different but more detailed description of the contract at issue:

> The critical procedures for this oral agreement are[:] when Kelly sends his inquiries, the contract would begin; when Sun offers the quotation of international trade term and Kelly accepts the quotation, the term is implemented; when Kelly sends the payment and Sun delivers the goods to CM, the sale contract is completed; when Kelly stops to send his inquiries and purchasing order, the obligations of the contract do not allow Kelly to contact Sun's suppliers.

In neither description are the terms "definite and certain" such that a court could enforce the contract.

There are no specifics about terms regarding delivery, duration of the contract, the products to which

the contract applies, the amount of the commission, or when or how payment would be received. This alleged contract does not outline the parties' obligations beyond the exchange of quotations, and, therefore, does not demonstrate a "meeting of the minds as to the terms of the agreement." Most importantly, the commission fee—a standard element of a broker's contract—was not agreed upon before the alleged execution of that contract began when Sun's email provided the first price quotations.

Second, the evidence upon which Sun and the majority rely cannot properly be considered as evidence of the formation of the alleged contract. The majority first finds that the price quotation sent by Sun to Kelly on July 5, 2006, that stated that there was a five percent commission for the order is evidence of a contract. Slip Op. at 6. However, the price quotation cannot provide evidence of what terms were agreed upon in any oral contract entered into by Kelly and Sun by phone earlier that day. More importantly, under Illinois law, the acts of a principal and not those of an agent (such as a broker) create the agency relationship, and it is the agent's burden of proof to demonstrate that relationship using evidence other than his own actions. *See First Am. Title Ins. Co. v. TCF Bank*, 676 N.E.2d 1003, 1008 (Ill. App. Ct. 1997); *Granite Props. Ltd. P'ship v. Granite Inv. Co.*, 581 N.E.2d 90, 92 (Ill. App. Ct. 1991); *Hajeck v. Wyrick*, 463 N.E.2d 1348, 1352 (Ill. App. Ct. 1984). Consequently, Sun cannot use evidence of his own actions that post-date the formation of the contract as proof of the existence of that contract.

The majority also relies on the use of the trade term "DDP" in emails between Kelly and Sun as evidence that the parties agreed to certain obligations with respect to delivery and conduct. Slip Op. at 6. It is common for businesses to solicit price quotations from different distributers, and the

use of trade language in doing so is not itself evidence of the existence of a contract or the terms of an alleged contract. Neither the use of standard trade terms nor Sun's email on their own provide sufficient evidence of the essential terms of the alleged contract. Sun offers no other objective evidence regarding the formation of the contract.

Because Sun failed to produce sufficient evidence that he and CM Products agreed to the material elements of the alleged contract, he failed to establish the essential elements of his breach-of-contract claim.

Therefore, I respectfully dissent and would affirm the district court's grant of summary judgment.